GEORGE FORSYTH *versus* ADONIRAM J. DAY, *& al.*

A principal can authorize his agent to act for and bind him in one name as well as in another.

An agent authorized to sign the name of his principal, effectually binds him by simply affixing to the instrument the name of his principal as if it were his own name.

As matter of convenience in preserving testimony, it is well that the names of all parties, who are in any way connected with written instruments, should appear upon the instruments themselves; but whether the name of the agent, who writes that of his principal, appear or not, his *authority* must be established *aliunde*.

The rule, as broadly laid down in *Wood* v. *Goodrich*, 6 Cush. 117, that the agent must make the instrument expressly as agent, and that this fact must appear on the instrument itself, cannot be sustained either by authority or upon principle.

A person may be bound by the use of his name by another on an implied authority.

In order to hold a party on implied authority, it must be made to appear, that he had knowledge antecedent to, or concurrent with the inception of the

instrument, that the assumed agent was thus using his name; that he permitted such use of it; and further, that injury had been sustained by the moving party in consequence of such permission. But when the use of the name of the principal by the assumed agent has been frequent and notorious, slight evidence on the latter point will be sufficient.

It is fraud in a person to acquiesce in the use of his name by another without authority, to the injury of innocent parties, and in such case the law will not permit him to deny the authority of the assumed agent.

In an action upon a note, to which the defendant's name had been signed by a third person, other notes, to which the defendant's name had been forged by the same person, either dated subsequent to the inception of the one in suit, or the existence of them not known to the defendant until after that time, and which the defendant had paid or had promised to pay, are not admissible evidence to show original implied authority on the part of such third person to sign the note in suit.

Neither are they competent evidence to establish the ratification or adoption by the defendant of the act of such third person in signing his name to the note. Ratification is equivalent to original authority; to be binding it must be made with full knowledge of all the facts; from the ratification or adoption of one specific act, no implication can arise, that another distinct, independent act of the same party has been adopted or ratified; the payment by the defendant of forged notes, in no way connected with that in suit, could have no legal tendency to show that he had ratified or adopted the latter.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, J., presiding.

This was an action of ASSUMPSIT upon a promissory note, purporting to be signed by the defendants. *A. J. Day* was defaulted. Daniel Day pleaded the general issue, and made affidavit denying his signature to the note in suit.

The facts will be found fully stated in the opinion of the Court.

The counsel for the defendants requested the Court to instruct the jury:—

1. That the defendant is not liable on the note in suit, unless he either signed it or authorized some one else to sign it for him.

2. That there is no evidence in this case competent to authorize the jury to infer authority by Daniel to Adoniram to sign his name to the note in suit.

3. If the defendant did not sign this note, nor authorize any one else to sign his name, and if it was not executed to

be used in Daniel's business, and was not so used, and he had no benefit therefrom, Daniel is not liable upon it; even though the jury be satisfied, that he did not inform the plaintiff's attorney, that his signature was not genuine when the note was presented to him after the note became due; that such a concealment of the fact, that his name had been forged, under such circumstances, was not such a fraud upon the plaintiff as will render the defendant liable in this action.

4. That if Daniel Day derived no benefit from the notes which Adoniram issued and affixed his name to without his consent, Daniel would not render himself liable on them by not repudiating them when they came to his knowledge.

5. That payment by Daniel of other notes to which Adoniram had affixed his signature, is not sufficient evidence for the jury to find, that Daniel authorized Adoniram to affix his name to this note, in the absence of proof that this note was made for, or used for Daniel's benefit.

6. That the fact that Adoniram had affixed the signature of Daniel to a large number of notes, some of which Daniel had paid, is not sufficient to authorize the jury to infer authority by Daniel to Adoniram to use his name in this case, if the plaintiff has failed to prove to the satisfaction of the jury, that Adoniram signed Daniel's name to this, after such use by Adoniram of his name came to the knowledge of Daniel.

7. That the defendant's neglecting to disclose to the plaintiff, or his attorney, the fact that the name of Daniel Day was forged to the note in suit, such paper never having been appropriated to the benefit of the defendant, was not a fraud upon the plaintiff, and he would not thereby be charged in this suit.

8. That the payment of one or any number of notes by the defendant, to which Adoniram had forged his name, had no tendency to show, and is not competent to prove, authority by the defendant to Adoniram to sign defendant's name to this note.

Forsyth *v.* Day.

9. That if the plaintiff or his attorney did present the note in suit to the defendant a short time before it was sued, as is testified to by Mr. Converse, the defendant did not, by neglecting to inform the plaintiff that his signature was not genuine, adopt the signature as his own, so as to render him liable in this action.

10. That if the payment of notes by Daniel, to which Adoniram had signed Daniel's name, is competent evidence from which the jury would be authorized to infer authority by Daniel to Adoniram to sign Daniel's name to this note; it is competent for the defendant to rebut such evidence by showing, that he paid such notes to save the character and prevent the imprisonment of his brother, and if the jury are satisfied that such were his motives, the inference is rebutted, and such payments would not be proof of authority.

1. The first requested instruction was given in the language of the request.

2. The second requested instruction was refused, and it was submitted to the jury to determine from all the evidence, whether Daniel had given Adoniram authority to sign his name to the note in suit.

3. The third requested instruction was refused, and the effect of the facts assumed to exist in the requested instruction was submitted to the jury.

4. The fourth requested instruction was given, with the further remark, that the conduct of Daniel, as proved, was evidence, the effect of which was for the jury.

5. The Court instructed the jury, that the fact of payment, as set forth in the requested instruction, was one for their consideration.

6. The sixth requested instruction was refused, and it was submitted to the jury for them to draw such inferences from the facts therein assumed, and the other facts in the case, as they should deem justly inferable therefrom.

7. The seventh requested instruction was not given, but the force and effect of the alleged fact, as evidence upon the question, was submitted to the jury.

8. The eighth requested instruction was refused.

9. The ninth requested instruction was given with the further remark, that the conduct of the defendant Daniel Day, was a matter proper for the consideration of the jury in connection with the other evidence in the case.

10. The tenth requested instruction was refused, and the effect of the facts therein assumed or alleged was submitted to the jury.

11. The counsel for defendant requested the Court to instruct the jury, " that there is no evidence in this case competent to authorize the jury to infer authority by Daniel to Adoniram to sign his name to the note in suit." The Judge refused to give the requested instruction, but submitted the question of authority to their determination.

The counsel for defendant requested the Court to submit the following questions to be answered by the jury:—

1. Did Daniel Day make payments on notes to which his name had been signed by Adoniram J. Day, because he had given Adoniram authority to sign his name to said notes, or because he wished to save Adoniram from exposure and imprisonment?

2. Did Daniel Day, when this note was presented to him, refrain from disclosing the fact that the signature was not his, because he had given Adoniram authority to sign his name, or because he wished to save Adoniram from exposure and punishment? But the requests were denied.

The Court instructed the jury, that Daniel Day would not be holden to pay the note in suit, unless he had signed the note, or had previously given authority to Adoniram to sign his name for him, or, knowing that he was in the habit of using his name as alleged, had sanctioned, approved and ratified his course, and had held him out to the public as thus authorized.

That in determining whether such authority had been given, it was proper for them to consider the length of time in which his name had been signed by his brother, the probability that Daniel would be likely to know such use of it, and

whether, with a knowledge of the acts of Adoniram, he had given them his sanction. That the various facts tending to prove, as well as to disprove, such knowledge and approval and sanction of the acts of Adoniram, were especially for their consideration; and that if they should find that Adoniram was acting under the authority of Daniel, or that Daniel, knowing that his brother had been in the habit of signing his name, had ratified and approved the same, and held him out to the world as thus authorized, they should find for the plaintiff.

If the verdict, which was for the plaintiff, was against the evidence in the case; if the rulings or instructions requested and refused, should have been given; or if the rulings and instructions given were erroneous, the verdict was to be set aside and a new trial granted; otherwise judgment was to be rendered on the verdict.

*A. P. Gould* and *H. Ingalls*, for defendant.

1. Evidence of the existence of notes *prior* to the date of the plaintiff's note was inadmissible. It was too remote and uncertain, and calculated to mislead the jury.

2. But if notes prior to plaintiff's were not admissible, those dated subsequently were clearly inadmissible.

3. The testimony as to payments of forged notes by Daniel, *after* the date of the plaintiff's note, should have been excluded.

To these points, the counsel cited Bayley on Bills, 320; *Hall* v. *Huse*, 10 Mass. 39; *Heam* v. *Rogers*, 9 B. & C., 386; *Cooper* v. *LeBlanc*, 2 Stra. 1051; Chitty on Bills, 39.

4. But if the notes and testimony introduced by plaintiff were admissible at all, they were so only for specific purposes, which should have been clearly defined and stated to the jury by the Court.

The counsel for defendant contended, that the instructions of the Court to the jury were in a variety of particulars erroneous. They further cited 1 Parsons on Con. 44; *Amory* v. *Hamilton*, 17 Mass. 103, 109; *Wyman* v. *Hallowell and Augusta Bank*, 14 Mass. 58; *Salem Bank* v. *Gloucester Bank*,

17 Mass. 33; *U. S. Bank* v. *Bank of Georgia*, 10 Wheat. 333; *Smith* v. *Mercer*, 6 Taunt. 312; *Hartford Bank* v. *Hart*, 3 Day, 491; *Brigham* v. *Peters*, 1 Gray, 139; *Constein* v. *Fonse*, 1 Camp. 43; *Fitzpatrick* v. *School Commissioners*, 7 Humph. 224, 228; *Young* v. *Adams*, 6 Mass. 182; *Hortons* v. *Townes*, 6 Leigh, (Va.) 47; *St. John* v. *Redman*, 9 Porter, (Ala.) 428; *Union Bank* v. *Berine*, 1 Grattan, (Va.) 226; *Hall* v. *Huse*, 10 Mass. 39; American Leading Cases, 572, ed. of 1852, note to *Calver* v. *Ashley;* *Willson* v. *Tamman*, 6 Manning & Gr. 236, 242; *Finney* v. *Fairhaven Ins. Co.* 5 Met. 192.

*Hubbard*, for plaintiff.

1. The testimony establishes the fact, that defendant knew his name was placed to the note in suit by his brother, at the time it was presented to him by the plaintiff's attorney. His not denying the genuineness, his conduct and declarations, amount to an adoption of the note as his own. *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1; same v. same, ib. 33: *Barbour* v. *Gingell*, 3 Esp. 60; *Leach* v. *Burnham*, 10 Wheat. 343; *U. S. Bank* v. *Bank of Georgia*, 10 Wheat. 333, and cases cited; Bayley on Bills, 326; 3 Day, 495; 2 Greenl. Ev. p. 67; 1 Greenl. Ev. 196; Paley on Agency, 143, 144; 1 Stark. 234; 1 Gray, 193; Story's Agency, 55, 56.

2. The instructions given to the jury went beyond the particular requests. They were too favorable to the defendant.

3. The verdict was conformable to the evidence. *Dewey* v. *Field*, 4 Met. 382.

4. The conduct of defendant was a fraud upon the plaintiff.

5. The instructions of the Court were correct.

RICE, J.—Assumpsit on a promissory note dated Oct. 16, 1854, for $270. Adoniram J. Day has submitted to a default. Daniel contests, on the ground that the name upon said note, purporting to be his, is not his genuine signature. The plaintiff received the note of Adoniram, for property

sold and delivered to him. There is no direct evidence show-ing that Daniel signed the note, or authorized Adoniram to place his name upon it. But the plaintiff contends that Dan-iel either authorized Adoniram to affix his name to the note originally, or has since adopted or ratified the act.

To sustain this proposition, the plaintiff, among other testi-mony, introduced a number of notes given by Adoniram to different parties, and upon which he had placed the name of Daniel as his surety. These notes all appear to have been given by Adoniram, in the prosecution of his own business, in which Daniel was in no way interested. Some of the notes thus introduced in evidence, bear date earlier than the note in suit, and there was testimony tending to prove that Daniel had knowledge that Adoniram had placed his name upon them, or some of them, before the date of the note in suit, but others bear date at a subsequent time. It also appears that after Daniel had discovered that Adoniram had forged his name upon many pieces of paper, he did not disclose the fact, but paid, or promised to pay, several pieces of the forged paper. To the introduction of all the forged paper the de-fendant objected, and especially to all such as bore date sub-sequent to the note in suit, or as was not brought home to his knowledge before the note in suit was executed and deliv-ered.

The plaintiff claimed to introduce the forged paper refer-red to above, to satisfy the jury either that Daniel had origin-ally authorized Adoniram to use his name, or had subsequent-ly adopted or ratified its use.

Were the forged notes, dated subsequently to the note in suit, or of the existence of which the defendant had no know-ledge until after the note in suit was executed and delivered, competent evidence to establish either implied or original au-thority or subsequent adoption and ratification?

In *Wood* v. *Goodrich,* 6 Cush. 117, in commenting upon the proper mode of executing a deed, or note, by an agent, FLETCHER, J., remarks, " It should appear upon the face of the instruments, that they were executed by the attorney, and

in virtue of the authority delegated to him for that purpose. It is not enough that the attorney in fact has authority, but it must appear by the instruments themselves, which he executes, that he intends to execute this authority. The instruments should be made by the attorney expressly as such attorney; and the exercise of his delegated authority should be distinctly avowed upon the instruments themselves. The instruments must speak for themselves."

In *Wilks* v. *Back*, 2 East, 143, a question was raised on the execution of submission bonds. Wilks was fully empowered to sign, seal, &c., for his late partner, Browne, and executed the submission thus:—" *Mathias Wilks*, L. S.— *Mathias Wilks*, L. S. for *James Browne*."

It was objected, that this was not a good execution on the part of Browne. In giving his opinion in the case, LAWRENCE, J., remarked, " this is not like the case in Lord Raymond's Reports, where the attorney had devised to the defendant, in her own name, which she could not do; for no estate could pass from her, but only from her principal. But here the bond was executed by Wilks for and in the name of his principal; and this is distinctly shown by the manner of making the signature. Not that even that was necessary to be shown; for if Wilks had sealed and delivered it in the name of Browne that would have been enough, without stating, that he had done so. There is no particular form of words to be used, provided the act be done in the name of the principal." LEBLANC and GROVE, J. J., expressed substantially the same views.

SOUTHERLAND, J., in *Pents* v. *Stanton*, 10 Wend. 271, remarks, " there is no doubt that a person may draw, accept or indorse a bill by his agent or attorney, and that it will be as obligatory upon him as though it was done by his own hand. But the agent, in such case, must either sign the name of the principal to the bill, or it must appear on the face of the bill itself, in some way or another, that it was in fact drawn for him, or the principal will not be bound.

Forsyth *v.* Day.

The particular form of the execution is not material, if it be substantially done in the name of the principal."

When a person has authority, as agent, to draw, accept, or indorse a bill for his principal, he should either write the name of the principal, or state in writing, that he draws, indorses or accepts as agent, or by *procuration* of A. B., &c. Chit. on Bills, 36.

The drawing, accepting or indorsing as agent for another person, may be effected by merely writing the name of the principal, as if he himself were actually the party signing; but the most explicit and regular course is to sign the name of the principal, and then immediately under it to add *per procuration*, A. B., &c. Chitty on Bills, 37.

No case, I apprehend, can be found in the books which will sustain the rule so broadly laid down by the learned Judge in the case of *Wood* v. *Goodrich*, cited above. Nor can the doctrine be sustained on principle. It is difficult to perceive any sound reason why, if one man may authorize another to act for him, and bind him, he may not authorize him thus to act for and bind him in one name as well as in another. As matter of convenience, in preserving testimony it may be well that the names of all parties, who are in any way connected with a written instrument, should appear upon the instruments themselves. But the fact that the name of the agent, by whom the signature of the principal is affixed to an instrument, appears upon the instrument itself, neither proves nor has any tendency to prove, the authority of such agent. *That* must be established *aliunde*, whether his name appears as agent, or whether he simply places the name of his principal to the instrument to be executed.

More even. The authorities clearly show that one man may be bound by the use of his name by another, simply from an *implied* authority. It becomes material in this case, to examine under what circumstances such implied authority will arise.

The case of *Neale* v. *Erving*, 1 Esp. 61, was assumpsit on a policy of insurance. To prove the subscribing of the de-

fendant's name to the policy, the broker who negotiated the policy was called. He proved that the defendant's name on the policy had been subscribed by one *Hutchings.* He said he did not know by what authority Hutchings had done it; but that Hutchings was in the constant habit of subscribing policies in the name of Erving, and had done several for him, and others to his knowledge. ERSKINE objected that Hutchings must have done it by power of attorney for the defendant, which should be produced. But Lord KENYON held that the acts of Hutchings held him out to the world as properly authorized; and his having subscribed several policies in the defendant's name was sufficient evidence of that authority, in order to charge the defendant.

*Brackenbank* v. *Sugrue*, 5 C. & P. 21, was on a policy of insurance in which an alteration to correspond to an alteration in the voyage, was made by one Stewart. To prove the authority of Stewart the agent of the company was called, who testified that "Mr. Stewart signed for the company; we did not send policies to Ireland to have such alterations as this made in them. I have known losses paid on policies having such alterations made by Mr. Stewart, without being sent to Ireland, and that such alterations were made very frequently." Lord TENDERDEN was of opinion, that these facts were sufficient to establish proof of agency, for the purpose of making the alterations.

*Watkins* v. *Vince*, 2 Stark. 362, was an action on a guaranty by the defendant, by which, as was alleged, he had guarantied to the plaintiff pay for 100,000 bricks. The guaranty was in the handwriting of James Vince, the son of the defendant, a minor of the age of 16. It was proved that he had signed for his father in three or four instances, and that he had accepted bills for him. It being objected that this did not afford sufficient evidence of authority on the part of the son, Lord ELLENBOROUGH held it was sufficient *prima facie* evidence, in the absence of any inducement on the part of the son to *commit a crime.*

In *Barber* v. *Gingell*, 3 Esp. 60, which was on a bill drawn

by Taylor, and accepted by the defendant. One ground of defence was, that the acceptance was a forgery, which was fully proved. The plaintiff then proved that the defendant had been connected with Taylor in business; that he had in fact paid several bills drawn as the present one was by Taylor, and to which Taylor, as it was supposed, had written the acceptance in the defendant's name.

These facts were held by Lord KENYON to be an answer to the forgery set up by the defendant.

In *Courteen* v. *Touse*, 1 Camp. 43, the policy of insurance, on which the action was brought, was signed by one Butler, for the defendant. A witness called, proved Butler's hand-writing, and swore that he had often observed him sign policies for the defendant; but he had not seen any general power of attorney from the defendant to Butler; nor did he know that Butler authorized him to sign this specific policy; nor was he acquainted with any instance in which the defendant had paid a loss upon a policy so subscribed. Lord ELLEN-BOROUGH held that the proof of agency must be carried further to charge the defendant.

In *Weed* v. *Carpenter*, 4 Wend. 219, it was held that where a man repeatedly, for three or four years, permitted his friend to indorse his name on bills and notes with his knowledge and without objection, a jury would be authorized to find authority for such indorsements.

In *Long* v. *Colburn*, 11 Mass. 98, PARKER, Justice, says, " This authority, (to sign a note,) may be by parol, by letter, by verbal direction, or may even be implied from certain relations proved to exist between the actual maker of the note and him for whom he undertakes to act.

In *Rusby* v. *Scarlett*, 5 Esp. 76, Lord ELLENBOROUGH says, " the general rule to subject the principal to the act of the agent is this, the agency must be antecedently given, or subsequently adopted. There must be in the latter case some act of recognition."

In *Bridgham* v. *Peters*, 1 Gray, 139, it was held, DEWEY, J., giving the opinion of the Court, that if the note in controversy

was indorsed in the same handwriting that Lambert had adopted as his, in his usual business transactions, it was competent for the defendant to show this fact.

As agency may be presumed from repeated acts of the agent, adopted and confirmed by the principal previously to the contract in which the question is raised, so such agency may be confirmed and established by a subsequent ratification. 1 Parsons on Contracts, 44.

Chancellor KENT says, 2 Kent's Com. 478, that an acquiescence in the assumed agency of another, when the acts of the agent are brought to the knowledge of the principal, is equivalent to an express authority. By permitting another to hold himself out to the world as his agent, the principal adopts his acts and will be held bound to the person who gives credit thereafter to the other in the capacity of his agent.

The holder of a bill purporting to be, but not in fact, accepted by the person to whom it is addressed, cannot recover against the apparent acceptor by proving a fact *subsequently* discovered, that on a former occasion the defendant had given a general authority to the person who accepted in his name, to accept bills for him. To make such authority available for such a purpose, he must show either that the authority remains unreversed at the time of the acceptance, or that he took the bill on the faith of the authority. Chitty on Bills, 35, note.

When it is sought to bind the principal for acts performed by an agent acting without express authority, on the ground of previous recognition of similar acts, it is necessary to show that the instrument in question was taken on the faith of such previous recognition. *St. John* v. *Redmond*, 9 Porter, 428.

It is a fraud in a person silently to lie by and see his name used by others without authority, to the prejudice of innocent parties. Though the party who acts may not in fact be the agent of the person for whom he assumes to act, the law will not permit a principal who remains silent when his name is

being used to the prejudice of others, with his knowledge, afterwards to deny the authority of his assumed agent. The rule to be deduced from the authorities I think to be this: To hold a party responsible for drawing, accepting, or indorsing a bill or note by another in his name, on an implied original authority, it must be made to appear, that the party sought to be charged had knowledge, antecedent to, or concurrent with the inception of the instrument sought to be enforced, that his name was being thus used by such assumed agent, and that he permitted it to be done; and further, that injury had arisen in consequence of such permission to the moving party. But when the use of the name of the principal had been with his consent, frequent and notorious, slight evidence on the latter point would be sufficient.

From these considerations it results, that all the notes introduced in this case, dated subsequent to the note in suit, and all other notes introduced, the existence of which was not proved to have been known to Daniel at or before the inception of the note in suit, were not competent evidence from which a jury would be authorized to infer original authority from Daniel to Adoniram to place his name on the note in suit, and for that specific purpose should have been excluded.

Were these same notes competent evidence from which the jury could legitimately infer the adoption or ratification of the one in suit?

The ratification of an act is equivalent to the original grant of authority. *Corno* v. *Iron Co.*, 12 Barb. 27.

But to make an unauthorized act binding upon the principal it must be made with a full knowledge of all the material circumstances in the case. *Hardemon* v. *Ford*, 12 Geo. 205. The ratification by a principal of the unauthorized acts of his agent is not binding unless made with a full knowledge of all the facts. *Nixon* v. *Palmer*, 4 Selden, N. Y.

Ratification and adoption are restricted to their own terms. By adopting or ratifying one specific act, no implication can arise that a distinct and independent act of the same party will also be adopted or ratified.

There was no evidence of any business connection between Daniel and Adoniram Day out of which the notes now under consideration originated. They appear to have been given by Adoniram for his sole benefit. After maturity, Daniel seems to have paid or caused some of them to be paid, and perhaps to have promised to pay others. This may have been done to relieve or protect his brother, or from other considerations. Those acts, however, must be deemed individual acts, each depending upon its own peculiar circumstances. So far as the defendant may have said or done any thing with reference to the note in suit, tending to show that he has ratified or adopted it, these acts or declarations are admissible in testimony against him. But the fact, that he has paid other forged notes, not connected with the note in suit, has no legal tendency to show that he has adopted or ratified that note, and they were not competent evidence for such a purpose.

We think the instructions given were not such as the defendant was entitled to receive, in view of the facts in the case, and his requests for instructions. There must therefore be a new trial.

Much consideration was given at the argument to the cases found in the books, growing out of suits to recover back money which had been paid on forged bills and notes. As the facts in this case do not, in my judgment, involve the principles discussed in this class of cases, I have not deemed it advisable to review the cases cited on that point.

*Exceptions sustained. — New trial granted.*

TENNEY, C. J., CUTTING and MAY, J. J., concurred.

APPLETON, J., was of opinion that a new trial ought not to be granted, and that the instructions given were correct.