## HELLMANN et als. v. POTTER.

A party who gives a general power of attorney to another to transact all business, etc., authorizing the attorney "to make, execute, and deliver promissory notes," etc., will be held liable for all such notes, etc., executed in his name by his attorney, when they have reached the hands of an innocent holder, although they may have been made for the private purposes of the attorney.

APPEAL from the District Court of the Twelfth Judicial District.

The plaintiffs brought their action on a promissory note made by the defendant by C. S. Potter, his attorney, under a general power of attorney to transact all of Defendant's business, authorizing the sale of real estate and the borrowing of money thereon, and empowering the attorney to execute good and sufficient deeds, mortgages, bills, bonds, notes, etc. There is a power of substitution, except as to selling or mortgaging real estate. The attorney testified on trial that he was the brother and sole attorney of defendant, who was then absent; that he gave the note in question, with others, in the purchase on his own account, of a grading contract of J. L. Wetmore, the payee of the note. The assignment was made in blank and delivered to a third person, acting for both, and was by him negotiated. The note was endorsed by Wetmore to Godeffroy, Sillem & Co., and by them sold and endorsed before maturity to the plaintiffs, who still hold it. The above facts being in evidence, the defendant moved for a non-suit, which was granted by the Court. A motion for a new trial was made by plaintiffs, and overruled by the Court, and judgment entered for defendant, and plaintiffs appealed.

*Hall McAllister* for Appellant.
The argument for respondent is this: That his attorney was authorized
2

to make contracts when the proceeds thereof enured to the benefit of his principal, but that a secret appropriation of the proceeds by the attorney to his own use renders the note void even in the hands of an innocent holder; for the plaintiffs in this case are proved to have bought the note before maturity in good faith, and for a valuable consideration, and without notice of any infirmity therein.   In other words, the party taking the note of A, executed by his attorney B, must not only ascertain whether B holds a warrant of attorney, and also that the note is executed in accordance therewith, but must also ascertain whether the moneys resulting therefrom have been properly appropriated.   Bailey on Bills, chap. xi., 492; Story on Bills, § 415, 416; Arbonin *v.* Anderson, 1 Adolph & El. N. S. 505; (41 Eng. Com. Law, 645.)

As against the defendant, the attorney undoubtedly exceeded his power, for which he is liable, but the purchaser of the note was not bound to look beyond the written authority.   Pickering *v.* Bush, 15 East., 38.   The defence is, that the defendant has been swindled by the person in whom he, and not we, reposed trust and confidence, and whom the defendant has clothed with apparent authority, and thus enabled to impose upon us; but that we must bear the loss, because we should have inquired whether the agent was honestly appropriating the funds raised in the name of his principal.   Such a doctrine would make the power utterly unavailable.   North River Bank *v.* Aymar, 3 Hill, 273.

Even the equity rule as to trusts is subject to many qualifications, and has been much questioned.   2 Story Eq. Juris., 1124, 1125.; Belfour *v.* Welland, 16 Vesey, 156.

The case of partners is exactly analogous, in which the doctrine contended for by us has been universally adopted.   Putnam *v.* Sullivan, 4 Mass., 45; Newman *v.* Oakley, 6 Yerger, 489.

The power to make notes is independent from the power to mortgage, not being limited by any reference to other powers in the instrument. It is a special and independent power, which it was not necessary to express in order to perfect the power to mortgage.   Sullivan *v.* Davis, 4 Cal., 291; Dunlap's Paley's Agency, 189; Smith *v.* People's Bank, 11 Shepley, 195; Rice *v.* Rice, 4 Pick, 349.

This is shown by the use of the word "Bills," which certainly are not necessary or proper to effectuate a mortgage.

*E. Cook* for Respondent.

We do not contend, as asserted by appellant's counsel, that if the attorney received the money for his principal and then secretly converted it to his own use, the principal would not be bound; but in this case the attorney never received the money for the respondent, but obtained it for his own use, with the knowledge of the parties to whom he gave the note that he had no right to make it, and the authorities cited by the appellant have no application to this case.

The case in 3 Hill, 262, much relied on by appellant, is based on a different state of facts, and in that case Judge Nelson delivered a very

Hellmann v. Potter.

able dissenting opinion, repudiating the idea that a principal is liable for an unauthorized act of his agent.

In Stainer v. Tyson, 3 Hill, Judge Cowen qualifies his opinion in the foregoing case. Atwood v. Munnings, 7 Barn. & Cress., 278; Dunlap's Paley on Agency, 3d edit. 192, 193; 8 Greenl. R., 338; N. Y. Ins. & Trust Co., v. Beebe, 4 Comstock, 364, 369.

The attorney had no power to make the note in question. In the power to appoint substitutes, the power to sell or mortgage real estate is excepted from the powers conferred upon the substitute, by the express terms of the power in question; showing an intention on the part of the principal to give the substitute less power than the attorney. The unlimited power to make notes, if independent, is the largest power that could be conferred. Rassiter v. Rassiter, 8 Wend., 494.

By reference to the power, the party•receiving the note could readily know that the attorney had no power to execute the note unless accompanied by a mortgage, and there being no mortgage, the taker of the note assumed the responsibility of its payment.

The opinion of the Court was delivered by Mr. Justice HEYDENFELDT. Mr. Chief Justice MURRAY and Mr. Justice TERRY concurred.

A party who gives his power of attorney to another authorizing the latter in general terms "to manage and transact all business matters of every nature and description in which I may be interested," and "to make, execute and deliver promissory notes, bills or bonds," will be held liable for all such securities executed in his name by his attorney, where they have reached the hands of an innocent holder, although they may have been made for the private individual purposes of his attorney. Where one of two innocent parties must suffer, it must fall on him who has trusted most.

The argument against this position rests upon the ground that the letter of attorney which confines the authority to the business of the principal, ought to put on inquiry the person to whom the note is offered. The law, however, requires no one to do a vain thing. In making the note the agent is guilty of falsehood; is it to be expected that he will disclose his falsehood upon being questioned? Would he not rather add to it by stating some simulated object in behalf of his principal? Shall it be required that the inquiry must extend to an examination of the books of the principal? In many cases the principal has no books; in some cases the examination of his books would result in the defeat of his commercial operations; in none could it disable the agent in committing frauds, for if a certain amount of money was seen from examination to be necessary, the same amount might be drawn from half a dozen different sources.

It is furthermore contended, that if no inquiry is demanded, as a rule of law, it will destroy the usefulness of letters of attorney, as nobody will trust to an extent which may result in ruin; but, on the other hand, the argument is equally cogent that to require so much of commercial men in the way of examination into the *bona fides* of a trans-

action, will equally weaken, if not to a greater degree destroy, the efficiency of such instruments.   Not only so, but it takes away one man's natural power of implicitly trusting another, and upon every occasion institutes an inquisition into his private business, destructive, may be, alike to his prosperity and independence of action.

The doctrine we here adopt is exactly analogous to that which is universal in cases of partnership; as where one partner having the power to sign the partnership name to a note, uses his power for his own purposes, and in fraud of his partners; the partners have every-where been held liable to an innocent holder.

Judgment reversed and cause remanded.