## INDIANA FLOORING CO. v. DISTRICT NAT. BANK OF WASHINGTON.

(Court of Appeals of District of Columbia. Submitted March 7, 1922. Decided April 3, 1922.)

No. 3672.

1. **Appeal and error ⬾882(14)—Request to submit question to Jury precludes contention evidence was insufficient.**

Where plaintiff had requested the submission of a particular issue to the jury, it cannot contend on appeal that it was error to submit the issue, because there was no evidence to support a finding for defendant thereon, since the request implied there was conflicting evidence on the subject, and therefore a question for the jury.

2. **Principal and agent ⬾92(2)—Bank not liable for cashing check on agent's authorized indorsement, regardless of its knowledge of authority.**

Where an agent had express authority to cash checks payable to his principal, the bank is not liable to the principal for paying the checks on the agent's indorsement, regardless of whether it knew of such authority before it paid the checks.

3. **Corporations ⬾432(7)—Resolution revoking authority of bank to cash checks on agent's indorsement is admissible to show agent's prior authority to indorse.**

A resolution adopted by a corporation, revoking the authority of a bank to cash checks on the indorsement of an agent of the corporation, is admissible against the corporation as evidence that the agent had authority to indorse the checks for the corporation, cashed by him before the adoption of the resolution.

Appeal from the Supreme Court of the District of Columbia.

Action by the Indiana Flooring Company against the District National Bank of Washington. Judgment for defendant, and plaintiff appeals. Affirmed.

C. Clinton James and E. Hilton Jackson, both of Washington, D. C., and Thomas L. Zimmerman, Jr., of New York City, for appellant.

Ralph P. Barnard, Guy H. Johnson, and W. E. Lester, all of Washington, D. C., for appellee.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District for the defendant, appellee here, in an action for the recovery of the proceeds ($5,579.39) of certain checks payable to the order of the plaintiff, appellant here, and cashed upon the indorsement of its Washington representative, who thereafter converted the proceeds to his own use. Under our view of the case it will be necessary to give only a brief summary of the facts:

Plaintiff, a New York corporation with headquarters in New York City, was engaged in the business of laying hardwood floors. In April of 1915 it established a Washington branch under the management and control of J. G. Chestnut, who testified that he was to receive 50 per cent. of the profits of the local business, in addition to a drawing account, and stand 50 per cent. of the losses. It was admitted that he had the right to draw about $30 weekly and to receive 50 per cent. of profits, but it was denied that he was to share in losses. According to the plaintiff, one of its representatives visited Washington once a

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

month; according to evidence for defendant, these visits did not occur oftener than four times a year. Chestnut had complete charge of the Washington branch, employed and discharged workmen and employees, fixed terms of payment for work done, accepted or refused credits, made all collections, and received payments in cash, promissory notes, or checks payable to the order of plaintiff or himself. He also indorsed, cashed, or deposited checks, bought merchandise, for which he paid by check or in cash, and alone dealt with local customers. Blank checks signed by an officer of the company, at least 50 at a time, were delivered to him to countersign, fill in the necessary amounts, and cash them at the bank. No checks were sent to New York, although a very large percentage of collections were in the form of checks. It is in evidence that the check books furnished Chestnut by the plaintiff had duplicate stubs, upon which he was supposed to enter the name of the debtor and the different amounts paid. From these check books all ledger posting was done, and a duplicate stub forwarded to New York. Duplicate deposit slips were required to be sent to New York by Chestnut. It is conceded that he had authority to indorse for deposit the checks here involved, but his authority to cash them is challenged.

Within a comparatively short time after Chestnut assumed charge of the Washington branch he commenced cashing checks payable to the plaintiff and appropriating the proceeds, but it was not until March of 1918 that an examination of his books and accounts was made, when his shortage was discovered. On the 26th day of that month a copy of a resolution of the board of directors of the plaintiff company, passed five days earlier, was sent to and received by the defendant. The material part of that resolution is as follows:

"Resolved, that authorization to the District National Bank to accept and pay any moneys on the counter signature or on the indorsement of J. G. Chestnut on any checks, drafts, and so forth, and so forth, of the Indiana Flooring Company, is hereby revoked, to take effect from the date of this meeting. * * *"

At the close of the evidence, and "during the course of the argument on the prayers submitted," one of—

"counsel for the plaintiff said to the court: 'If the court please, it seems to me up to this point there are two propositions that ought concededly to go to the jury: First, if Chestnut had express authority to cash these checks, it makes no difference whether the bank knew it or not because it was up to the plaintiff as to what became of the proceeds. We think that instruction ought to go to the jury. Second, we think that all the circumstances that your honor has hinted at, namely, under the general characterization of negligence in permitting him (Chestnut) to do business in this general or unchecked way, connected with all other circumstances, that would come under the general heading of holding out."

Thereupon:

"The court announced that he would submit two questions to the jury, and require them to render their verdict subject to the opinion of the court, and submitted to counsel for the parties the form of verdict subsequently appearing herein, and said: 'I am going to submit these two questions to the jury, or I am going to leave to the jury solely and only the question as to the actual authority.'"

The court then expressed a desire for more time to consider the latter point, "after reading all the evidence in the case," and announced that he would submit "these two questions." Counsel for plaintiff then said: "I would like very much for that to be done, your honor." Accordingly, after a comprehensive charge; the jury were asked to find:

First, whether plaintiff authorized Chestnut "to indorse the checks mentioned in the declaration otherwise than for deposit to the plaintiff's credit with the defendant"; and, second, whether the defendant was "induced by appearances for which the plaintiff was responsible in taking the checks mentioned in the declaration otherwise than for deposit to the plaintiff's credit."

The jury answered both questions in the affirmative, and thereupon the court directed a verdict for the defendant, "to which action of the court, in directing the entry of a verdict for the defendant," the plaintiff excepted. The record further shows that plaintiff also excepted to the refusal of the court to grant certain prayers, to which we will allude later.

Thereafter, in a motion for a new trial, plaintiff contended that there was no evidence to go to the jury, and in overruling that motion the court said:

"There was evidence to sustain the first finding of the jury of express authority to indorse the checks, but I think that there was no evidence, or at least not sufficient evidence, to support the second finding. * * * However, as the verdict is supported by the former finding, it cannot be set aside."

[1] It is first contended that—

"The evidence affirmatively establishes the absence of express authority to cash the checks in question, and therefore there was no issue properly determinable by the jury upon the question of express authority."

As this question was submitted to the jury at plaintiff's request, plaintiff is not now in a position to contend that the court erred in so doing. The request implied that there was conflicting evidence upon the subject, and therefore a question for the jury. It is too late, now that the jury has decided in favor of the defendant, to say that there was no evidence. This we have ruled in an opposite case. Whelan v. Welch, 50 App. D. C. 173, 269 Fed. 689.

Appellant next insists that the court erred in refusing to grant its fifth prayer, to the effect that there was no evidence to go to the jury on the question or principle of estoppel. It was during the discussion of this prayer and others that counsel for appellant requested the court to submit this very question to the jury, so that it results, from what we already have said, that appellant is not in a position to insist upon this assignment.

[2] The refusal of the court to grant appellant's third prayer, to the effect that the defendant bank would be liable unless it should appear that "the plaintiff had acquiesced in and recognized such indorsements as being made by its authority, and that the defendant knew of such acquiescence by the plaintiff prior to cashing the checks in question," also is assigned as error. This prayer likewise was inconsistent with the attitude of counsel at the trial, who then correctly stated the rule as follows:

"If Chestnut had express authority to cash these checks, it makes no difference whether the bank knew it, or, not, because it was up to the plaintiff as to what became of the proceeds."

[3] It is further contended that the court erred in admitting in evidence the resolution of March 21, 1918, which plaintiff sent defendant. This was clearly admissible, for it was direct evidence of plaintiff's understanding as to Chestnut's authority, and plaintiff, if any one, was in a position to know what that authority was.

The jury having found that Chestnut had express authority to cash the checks in question, the direction of a verdict and the entry of judgment for the defendant followed as matter of course, irrespective of the answer of the jury to the second question. It is unnecessary, therefore, to determine whether the court was right or wrong in expressing the view that the evidence did not warrant the second finding of the jury.

We have carefully examined other questions discussed in the brief of appellant, but have found them devoid of merit. The judgment therefore must be affirmed, with costs.

Affirmed.