[L. A. No. 14804. In Bank.—December 21, 1934.]

EMMA MARTHA KIEKHOEFER, Appellant, v. UNITED STATES NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent.

Lewis M. Andrews and M. D. Andrews for Appellant.

G. L. Berrey, Louis Ferrari and Edmond Nelson for Respondent.

CURTIS, J.—Plaintiff was the owner of a valuable lot in the city of Pasadena referred to in the record as the Lake

Street property. She became acquainted with Arthur Palmer, a real estate agent in said city. The latter induced her to execute to him a general power of attorney. He borrowed $8,000 from the Mortgage Discount Company, giving as security a trust deed upon plaintiff's said lot, which he executed, together with a promissory note in the sum of $8,000, as attorney in fact of plaintiff, acting under said general power of attorney. This loan was handled through an escrow in the defendant United States National Bank. There was a prior encumbrance of $2,000 on said lot, which the bank paid, and after deducting escrow and other charges there was a net amount of $5,654.91 due out of the escrow, for which the defendant bank drew its check on its escrow account in favor of the plaintiff in her then name of Emma Martha Storz. She has since married. Her name is now Emma Martha Kiekhoefer. This check was delivered to Palmer, who endorsed the same as follows: "Emma Martha Storz by Arthur Palmer, Attorney in Fact. Arthur Palmer." The check bearing said endorsement was presented by Palmer to the bank of Italy in Pasadena. That bank, however, refused to accept or pay said check as thus endorsed. Palmer took the check out of the Bank of Italy at Pasadena and canceled the endorsements then on the check by drawing lines through the same, and re-presented the check to said bank with new endorsements thereon as follows:

"Pay to the order of Arthur Palmer Company."

"EMMA MARTHA STORZ." and

"Pay to the Order of Bank of Italy National Trust & Savings Ass'n."

"ARTHUR PALMER Co."

Arthur Palmer Company was the name in which the said Arthur Palmer carried on his business. The name "Emma Martha Storz" in the new endorsement had been written by Arthur Palmer. In fact, her name to said endorsement had been traced on the back of said check by Palmer so as to simulate the true signature of Emma Martha Storz. The bank cashed said check and gave Palmer credit for the amount thereof and thereafter collected the same from the defendant bank upon which said check was drawn. This check was dated November 14, 1927, and was cashed by the defendant bank on the second day thereafter. The plaintiff, at least as early as April, 1928, discovered that Palmer had

borrowed money on the Lake Street property by the use of said power of attorney and on May 21st following she instituted an action against Palmer in which she alleged that she had executed and delivered said power of attorney to Palmer for the purpose of enabling him to borrow money on the Lake Street property but that Palmer had made false and fraudulent representations to her regarding property which he claimed to own and had failed to carry out certain promises made to her at the time she executed said power of attorney, which promises constituted the consideration for her execution of said power of attorney. Thereafter and some time in the month of August following at Palmer's preliminary hearing in the Municipal Court of Los Angeles, on a charge of grand theft, she found out for the first time, when said check was produced at said hearing, that said check had been issued in her favor and that Palmer had endorsed the same by signing her name on the back thereof as hereinbefore described. She thereupon brought this action against the drawer of said check, the United States National Bank, for the recovery of the sum of $5,654.91. Her complaint in this action contains two counts. In the first count she alleges the circumstances leading up to this issuance of said check, that it was issued in her name and without her knowledge or consent, that it came into the hands of the Arthur Palmer Company; that her endorsement was fraudulently forged to said check and that the bank claimed to have made payment of said check on said forged endorsement. By the second count of her complaint, plaintiff alleged the same circumstances leading up to the execution of said check as were contained in the first count. She then alleged the delivery of said check to her agent; that it was her sole property; that it was never paid to plaintiff, and without her knowledge or consent said check came into the possession of defendant bank. She also alleged demand for payment and refusal by defendant to pay said check or any part thereof to her. Defendant answered said complaint, and in addition to certain details alleged that it had paid said check to plaintiff's duly authorized agent, Arthur Palmer, who in said transaction was acting for plaintiff under the general power of attorney hereinbefore referred to. The action was tried by the court, and upon findings of fact in favor of the defend-

ant, the court rendered judgment denying plaintiff any relief. From this judgment the plaintiff has appealed.

▇ Preliminary to the discussion of the points raised on the main appeal, we will consider the motion of respondent to dismiss the appeal upon the ground that the notice of appeal is so defective and insufficient as to confer no jurisdiction upon this court to hear said appeal. The notice of appeal herein was contained in the request of appellant for a transcript and is substantially in the same language as the notice of appeal considered by us in the case of *Purity Springs W. Co.* v. *Redwood Ice Delivery,* 203 Cal. 286 [263 Pac. 810], in which we denied a motion to dismiss that appeal. On the authority of that case and the authorities cited therein, the motion of respondent to dismiss the appeal in the present action is denied.

▇ It is contended by appellant that the signing of her name by Palmer to the endorsement of said check was a forgery, and therefore the payment of said check under such an endorsement was unauthorized.

One of the principal, if not the decisive, questions presented on this appeal is whether Palmer under said power of attorney had the authority to endorse said check for and on behalf of plaintiff. The answer to this question depends to a large extent, if not wholly, upon the terms of said power of attorney. Among the powers expressly conferred upon Palmer by said instrument was authority, "for me and in my place and stead, and for my use and benefit, to ask, demand, sue for, recover, collect, and receive all such sums of money, debts, dues, accounts, legacies, bequests, interest, dividends, annuities and demands whatsoever as are now or shall hereafter become due, owing, payable or belonging to me and have, use and take all lawful ways and means in my name or otherwise for the recovery thereof, by attachments, arrests, distress, or otherwise, and to compromise and agree for the same, and acquittances or other sufficient discharges for the same. . . . Also to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods, wares, and merchandise, choses in action, and other property in possession or in action, and to make, do and transact all and every kind of business of what nature or kind soever, and also for me and in my name, and as my act and deed to sign, seal,

execute, deliver and acknowledge such deeds, leases and assignments of leases, covenants, indentures, agreements, mortgages and deeds of trust, hypothecations, bottomries, charter-parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases and satisfactions of mortgage, judgment and other debts, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises. GIVING AND GRANTING unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, and I hereby ratify all that my said attorney may or shall lawfully do or cause to be done by virtue of these presents.'' It is difficult to perceive how the plaintiff could have conferred upon Palmer broader or more comprehensive powers than those enumerated in said power of attorney. In addition to the broad general powers thereby conferred, Palmer was authorized in the name of the plaintiff and for her act and deed to sign, execute and deliver bills, notes, evidences of debt and such other instruments in writing of whatever nature and kind as might be necessary or proper in the premises; also to bargain, buy, sell, and deal in choses in action; and to recover, collect and receive all sums of money, debts and accounts, ''as are now or shall hereafter become due, owing, payable or belonging to me''. After detailing these specific powers, the letter of authority conferred upon Palmer, ''authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present''.

Turning to the Civil Code, we find that a '' 'bill' means bill of exchange, and 'note' means negotiable promissory note'' (sec. 3266, Civ. Code), and that ''a check is a bill of exchange drawn on a bank payable on demand''. (Sec. 3265a, Civ. Code.) The power of attorney therefore expressly empowered Palmer to execute a check in the name of the plaintiff. While nothing is said in the power of attorney about endorsing checks, authority to endorse would, we think, be included in the power to execute a check. This would especially be true when under the power of attorney held by Palmer he was authorized to demand,

sue for, collect, and receive all sums of money and debts due plaintiff. It is a matter of common knowledge that most of the transactions now carried on in the business world in which money is collected and paid is done by means of bank checks. We think that it is idle to contend that one who is specifically given the broad powers conferred upon Palmer, including authority to demand and collect debts and receive money due his principal, is not authorized to endorse a check received by him in his principal's business which was made payable to his principal. The case of *Moore* v. *Gould*, 151 Cal. 723, 727 [91 Pac. 616], involved the authority of an agent under a general power of attorney substantially like that here involved, to execute a renewal of a note and mortgage in behalf of his principal. The opinion of the court in that case is quite enlightening, and we quote from it at length as follows:

"In either aspect these writings were sufficient to take the case out of the operation of the statute of limitations so far as the defendant Peterson is concerned, if Gould was authorized to execute them as Peterson's agent and in his behalf. Whether or not he was so authorized depends upon a consideration of the terms of the power of attorney. This instrument was in the form in common use in this state, and usually described as that of a 'general power of attorney'. It authorized Gould, in the name of Peterson, and for his use and benefit, to perform any of a great variety of acts set forth in the instrument. These acts include almost every conceivable mode of dealing with real and personal, tangible and intangible property, and their enumeration is followed by these words: 'and to make, do and transact all and every kind of business of what nature and kind soever, and also for me and in my name, and as my act and deed, to sign, seal, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, mortgages, hypothecations, bottomries, charter-parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases, and satisfaction of mortgage, judgment and other debts, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises.' This power authorized the execution by Gould of the two instruments in question. The purpose and effect of a power of attorney of this kind are to vest in the attorney full authority to trans-

act any and all kinds of business for the principal. Every phrase in it defining the authority of the attorney is in broad and unrestricted terms, and such terms are to be given an interpretation in harmony with the scope and purpose of the instrument read as a whole. It is true that where a power is given for a limited or specific purpose general words following the declaration of the particular purpose are to be limited to such acts as may be necessary to accomplish such particular purpose. (*Washburn* v. *Alden,* 5 Cal. 463; *Billings* v. *Morrow,* 7 Cal. 171 [68 Am. Dec. 235]; 1 Am. & Eng. Ency. of Law, 2d ed., p. 1000.) But this rule has no application to such an instrument as the one now under consideration. Nowhere in this power of attorney is there any language limiting the scope of the business which may be performed by the attorney, and the generality of the terms employed clearly includes authority to execute the instruments of renewal.'' To the same effect are the cases of *Hellmann* v. *Potter,* 6 Cal. 13, and *Seymour* v. *Oelrichs,* 162 Cal. 318, 322 [122 Pac. 847]. We conclude from these authorities that under the broad powers conferred upon Palmer by this general power of attorney, he was authorized to endorse for collection the check issued by the defendant bank to plaintiff.

Plaintiff further contends, however, that Palmer in the endorsement of said check did not act under the authority given him by said letter of attorney, but that he simulated plaintiff's name in the endorsement of said check, and that he thereby forged her name to said check. To put plaintiff's contention in a different form, she claims that Palmer forged her name to said check, and that the respondent bank paid said check on a forged endorsement. It may be true that Palmer deceived the Bank of Italy by pretending to said bank that the endorsement of said check bore plaintiff's true signature, and that said bank would not have paid said check to Palmer had it not believed that plaintiff had personally signed said endorsement. This action, however, is not against the Bank of Italy, but is against the defendant bank, and the latter is not liable to plaintiff if Palmer had authority to endorse said check by signing plaintiff's name thereto in the manner in which he did. We have already held that Palmer, under the letter of attorney issued to him by plaintiff, had authority to en-

dorse said check as the agent and attorney in fact of the plaintiff. It is contended by plaintiff that he did not so endorse said check, and that by signing her name to said endorsement in the manner in which he did, Palmer acted beyond his authority and that her said signature was a forgery. There are authorities to support the plaintiff's position, notably *Wood* v. *Goodridge,* 6 Cush. (Mass.) 117 [52 Am. Dec. 771]. Ruling Case Law cites that case in support of its statement in volume 21, page 880, that if an attorney signs his principal's name to a note or mortgage, without adding his own name as agent, there is an insufficient execution of the instrument. However, in the note following the text of that case in the volume of American Decisions, the correctness of the ruling therein is questioned. *Wood* v. *Goodridge* has been criticised by the Supreme Court of Maine (*Forsyth* v. *Day,* 41 Me. 382, 391), the judge delivering the opinion in that case stating; "No case, I apprehend, can be found in the books which will sustain the rule so broadly laid down by the learned judge in the case of *Wood* v. *Goodridge,* cited above." The case of *Wood* v. *Goodridge* has also been rejected by Williston in his work on Contracts, volume 1, page 564. The prevailing rule seems to be correctly stated in the case of *Flat Top Nat. Bank* v. *Parsons,* 90 W. Va. 51 [110 S. E. 491], where the court in discussing this question declared the law applicable thereto as follows: "It is further contended by the defendant that the note in suit is not binding upon him, first, because it is not signed by him, and second, that even if Benton held a valid power of attorney to execute said note on behalf of Parsons, that the note was improperly executed, in that under such a power, the signature should have been in some form such as 'A. F. Parsons, by C. T. Benton, Attorney in Fact,' or 'A. F. Parsons, by C. T. Benton, Agent,' the defendant citing to sustain his position, 21 R. C. L. 880. It says: 'Again, if an attorney signs his principal's name to a note or mortgage without adding his own name as agent, there is insufficient execution of the instrument.' To this we cannot agree. Our Negotiable Instruments Law, Code, chapter 98A, section 19 (sec. 4190), provides: 'The signature of any party may be made by a duly authorized agent; no particular form of appointment

is necessary for this purpose, and the authority of the agent may be established as in other cases of agency.'

"This clearly negatives the idea that the name of the agent must appear upon the note signed by him, in some capacity showing his agency. (1 Daniel, Negotiable Instruments, 6th ed., secs. 298, 299, citing *Mechanics' Bank* v. *Bank of Columbia,* 5 Wheat. (U. S.) 326 [5 L. Ed. 100]; 1 Mechem, Agency, 2d ed., sec. 1128, citing *First National Bank* v. *Gay,* 63 Mo. 33 [21 Am. Rep. 430]; *Forsyth* v. *Day,* 41 Me. 382; 2 C. J., p. 673; 1 Williston, Contracts, sec. 299.)"

The section of the Negotiable Instruments Law referred to above is in the exact language of section 3100 of our Civil Code. Other authorities to the same effect are as follows: *Indiana Flooring Co.* v. *District Nat. Bank,* 280 Fed. 522 [51 App. D. C. 391]; *Salen* v. *Bank of State of New York,* 110 App. Div. 636 [97 N. Y. Supp. 361]; *Cluett* v. *Couture,* 140 App. Div. 830 [125 N. Y. Supp. 813], affirmed 206 N. Y. 668 [99 N. E. 1105]; *McCabe Hanger Mfg. Co.* v. *Chelsea Exchange Bank,* 183 App. Div. 441 [170 N. Y. Supp. 759]; *Substantial B. & L. Assn.* v. *Real Estate Title Ins. & Trust Co.,* 82 Pa. Super. 211; *Wegener* v. *Emmetsburg Nat. Bank,* 195 Iowa, 1267 [193 N. W. 627, 631.]

A distinction is made in some jurisdictions between sealed and unsealed instruments or between deeds and mortgages on the one hand and other instruments not affecting real property on the other. In this state it is expressly provided that, "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." (Sec. 1095, Civ. Code.) The fact that the legislature has made this requirement respecting instruments affecting real property and has not seen fit to legislate as to other kinds of instruments, justifies the inference that instruments not affecting real property may be executed without the formality required by said last-mentioned section of the code. The check here involved did not in any manner affect real property. The endorsement thereof by Palmer was not only within the authority conferred upon him by said letter of attorney but the manner in which he made said endorsement was authorized by said instrument.

Being a legal endorsement by plaintiff's agent, it was binding upon her, and justified the defendant bank in paying the same. As Palmer had the legal right to sign plaintiff's name to said endorsement, his act in so doing was, of course, not a forgery. Forgery is defined as the signing by a person of another's name knowing that he has no authority so to do. (Pen. Code, sec. 470.) Palmer could not know that he had no such authority when he in fact had such authority.

There are other questions raised in the argument and briefs of the parties, but we think the above discussion covers all the essential features of the case as presented by the record.

██ In closing this opinion, we think a further brief statement should be made of the case as a whole. The evidence in our opinion clearly shows that Palmer won the confidence of the plaintiff, and induced her to execute said power of attorney in his favor. The purpose of giving him this power of attorney was to enable Palmer to raise money upon plaintiff's Lake Street property. This Palmer did in the manner and to the extent practically as plaintiff planned that he should. Plaintiff knew of this transaction as early as April, 1928, the power of attorney having been executed on October 1, 1927. In the month of May following, plaintiff attempted by an action in court to compel Palmer to restore her Lake Street property to the condition in which it was at the time she gave to him said power of attorney. It does not appear just what became of this court proceeding, but that is not material. Some time thereafter, Palmer was arrested for grand theft growing out of his dealings with plaintiff and at his preliminary examination, held on August 8, 1928, the plaintiff learned that Palmer had endorsed said check by signing her name thereto without adding to the signature his own name followed by words showing an agency. She then conceived the idea that her name to said endorsement was a forgery and that the bank had no authority to pay the same upon the forged endorsement. This action followed. From the foregoing, the conclusion is inescapable that plaintiff entered into the transaction with Palmer for the express purpose of enabling him to raise money on the property. She gave him full power and authority to encumber her property for that pur-

pose. She knew that he had carried out his purpose, and had received the money just as she had planned. She made no effort to recover this money until she discovered what she construed to be an irregularity in the endorsement of the check through which Palmer obtained the money. She then attempts to recover, not from Palmer but from the defendant bank, the very money which by her agreement with Palmer she had arranged for him to have, basing her right of recovery on the assumed irregularity in the endorsement of said check. In our opinion there is no principle, either equitable or legal, which would justify a recovery under such a statement of facts.

The judgment is affirmed.

Preston, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.