[Civ. No. 5357. Fourth Dist. Feb. 25, 1957.]

FORREST M. ROTH, Respondent, v. RUBY FAYE SCHAAF, Appellant.

Bradley & Bradley for Appellant.

Ted R. Frame for Respondent.

MUSSELL, J.—This is an action on a promissory note executed by Chester Loyd Schaaf, now deceased. The note is dated April 20, 1954, and provides for the payment to plaintiff, Forrest M. Roth, of the sum of $3,000 on or before September 30, 1954. The note was for money advanced to Schaaf by plaintiff. It was signed by Chester Schaaf and by defendant Ruby Faye Schaaf, by Chester Schaaf, under the authority of a general power of attorney executed by her on February 27, 1954. The trial court rendered judgment in favor of plaintiff for the amount of the note, together with attorney's fees and costs, and the defendant appeals from the judgment. Her contentions are that her husband, Chester Schaaf, had no authority under his power of attorney to borrow money from plaintiff and to cosign her name to the note without showing that the money borrowed was for her use and benefit and that plaintiff should have had knowledge that the money borrowed was for the use and benefit of defendant before he could hold her liable.

On April 20, 1954, defendant and her husband were living together as man and wife and came to Dinuba on a vacation trip to visit his mother. At about 8 a. m. on April 20, 1954, Schaaf told his wife he was going over to Huron to see the plaintiff, whom he had not seen for a long time. He arrived at Huron about noon and visited for about 45 minutes with plaintiff and his wife, who operated a tavern, bar and cardroom. Schaaf then left, returned at about 8 p. m. and told plaintiff that he needed $3,000; that "if he didn't have $3,000, that they were going to lose their ranch and that he never even had any grocery money. He was broke, in other words." When plaintiff asked him how long he would need

the money, Schaaf stated he had his ranch up for sale, that he figured five or six months would be sufficient time, and the note would be paid off then. Plaintiff thought the matter over and then talked with his wife about it, after which he told Schaaf he could not lend him the money without his wife's signature. Schaaf then produced a written general power of attorney, dated February 27, 1954, recorded March 1, 1954, which, by its terms, authorized Schaaf to sign and execute in his wife's name, notes, receipts and evidences of debt. Schaaf stated that the reason he had the power of attorney "was to come down and borrow some money." Plaintiff examined the document and "didn't see anything wrong with it." He then agreed to lend Schaaf $3,000 and sent for a blank note which Schaaf then signed for both himself and his wife. Plaintiff then paid Schaaf $3,000 in cash and Schaaf left the place.

Defendant testified that she did not authorize the loan and did not find out about it until after the death of her husband, which occurred on October 25, 1954; that her husband may have told her about the loan but that when he returned to Dinuba on April 21st, he did not tell her about it and did not tell her he had signed her name to a promissory note.

The trial court found, in part, that Schaaf signed the note with defendant's consent; that plaintiff neither knew nor had reasonable ground to believe that Schaaf was exceeding the authority granted to him; that on April 20, 1954, defendant and her husband needed money for living expenses and to satisfy community obligations; that at said time and prior thereto Chester Schaaf had handled the business affairs of himself and defendant and customarily had charge of the payment of community debts; that it is untrue that the note sued on was executed without any consideration whatever on the part of the defendant. Defendant contends that these findings are not supported by the evidence. However, she testified that she and her husband were living on a cattle ranch; that there was a loan of $4,000 due to a bank on April 24, 1954; that the income from their ranch was $250 per month; that her husband handled their business affairs and paid the bills and kept the books; that on April 20, 1954, her husband might have had sizeable obligations unknown to her; that she executed the general power of attorney for her husband to enable him to execute a deed for a right of way for road purposes across her separate property and she revoked the power of attorney on May 21, 1954. While her

testimony was to the effect that the power of attorney was executed for the limited purpose stated by her, the document itself, as shown to plaintiff, contained no such limitation, and the finding that plaintiff did not have reasonable grounds to believe that Schaaf was exceeding the power granted to him is supported by substantial evidence.

In this connection, there was evidence that plaintiff knew that Schaaf lost money on his cattle ranch; that he had previously loaned money to Schaaf and his wife and had obtained a note signed by them; that plaintiff had known Schaaf for about 40 years. Plaintiff's wife testified that on April 20, 1954, Schaaf told her they were desperate and one of the occupants of the restaurant at the time the loan was made heard Schaaf state that he had to have $3,000 or they would lose everything they had. While plaintiff did not ask Schaaf what he was going to do with the money, the trial court could infer and find from the testimony that Schaaf was procuring the loan in part for defendant's use and benefit.

■ The findings of the court are to receive such a construction as will uphold, rather than defeat its judgment thereon, and are to be read and construed together and liberally construed in support of the judgment. (*Metcalf* v. *Hecker*, 127 Cal.App.2d 634, 638 [274 P.2d 188].)

Defendant admits that the power of attorney authorized Schaaf to sign promissory notes in defendant's name, but contends that there could be no implied authority given to him to cosign a note given for money borrowed for his own use. As authority for this contention, the case of *New York Life Ins. Co.* v. *Daley*, 25 Cal.App. 376 [143 P. 1033], is cited. In this case it was held that formal instruments conferring authority to bind another must be strictly construed in accordance with the plain import of the language of the document, and its interpretation cannot be extended by implication so as to authorize acts beyond those specified, unless absolutely necessary to carry out the powers expressly delegated, and that the power was restricted to those acts only which were for the defendant's use and benefit.

■ While the rule is well settled that a general power of attorney to do acts for the use and benefit of the person conferring the power does not confer the power on the donee to do acts for the benefit of the donee or for the benefit of a third person, in the instant case the trial court could reasonably infer that the loan involved was made for the benefit of

the defendant for the payment of community obligations and to prevent the loss of property in which she had an interest. Notice is the important element and where it does not appear that the plaintiff knew or should have known that the money was not to be used for defendant's benefit, the defendant is bound by the acts of her agent. (*Bank of America* v. *Perry,* 41 Cal.App.2d 133, 137 [106 P.2d 53].)　In *Kiekhoefer* v. *United States Nat. Bank,* 2 Cal.2d 98, 104-105 [39 P.2d 807, 96 A.L.R. 1244], the court, in discussing a general power of attorney, such as is here involved, said:

" '. . . The purpose and effect of a power of attorney of this kind are to vest in the attorney full authority to transact any and all kinds of business for the principal. Every phrase in it defining the authority of the attorney is in broad and unrestricted terms, and such terms are to be given an interpretation in harmony with the scope and purpose of the instrument read as a whole. It is true that where a power is given for a limited or specific purpose general words following the declaration of the particular purpose are to be limited to such acts as may be necessary to accomplish such particular purpose. (*Washburn* v. *Alden,* 5 Cal. 463; *Billings* v. *Morrow,* 7 Cal. 171 [68 Am.Dec. 235] ; 1 Am. & Eng. Ency. of Law, 2d ed., p. 1000.) But this rule has no application to such an instrument as the one now under consideration. Nowhere in this power of attorney is there any language limiting the scope of the business which may be performed by the attorney, and the generality of the terms employed clearly includes authority to execute the instruments of renewal.' To the same effect are the cases of *Hellmann* v. *Potter,* 6 Cal. 13, and *Seymour* v. *Oelrichs,* 162 Cal. 318, 322 [122 P. 847]."

In the instant case the trial court found that "plaintiff neither knew nor had reasonable ground to believe that Chester Schaaf was exceeding the authority granted to him by the defendant." The findings of the trial court are supported by substantial evidence and cannot be here disturbed.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.