STATE, APPELLANT, *v.* ALEXANDER ET AL., RESPONDENTS.

(No. 5,668.)

(Submitted April 22, 1925. Decided May 9, 1925.)

[236 Pac. 542.]

*Criminal Law — Forgery — Elements — What Does not Constitute Crime.*

Forgery—Essential Elements.
    1. The essential elements of the crime of forgery are: A false making of an instrument in writing; a fraudulent intent, and a writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability.
Same—What Does not Constitute.
    2. A bank in this state had in its possession travelers' checks which it held in trust for a New York bank with authority to sell them

---

1. What constitutes forgery, see notes in 22 Am. Dec. 306; 119 Am. St. Rep. 317. See, also, 12 R. C. L. 139.
2. What may be subject of forgery, see note in 8 Am. St. Rep. 466. See, also, 12 R. C. L. 144.

under agreement to immediately remit the price to the latter bank. An officer of the former, who had authority to do so, issued one of of the checks when the bank was insolvent without requiring the purchaser to pay therefor or remitting the price. *Held,* that since the officer issuing the check, which the New York bank was compelled to pay, was authorized to "make" the writing by inserting the date, the amount and the name of the selling bank, and the purchaser who signed it was a real and not a fictitious person, there was no false making of the instrument and the information charging the officer with forgery was properly dismissed on general demurrer.

Forgery, 26 C. J., sec. 5, p. 897, n. 21; sec. 17, p. 903, n. 91; sec. 20, p. 906, n. 40; sec. 89, p. 942, n. 81.

*Appeal from District Court, Wheatland County; Wm. L. Ford, Judge.*

J. G. Alexander and Logan Fowell were by information charged with forgery. From a judgment dismissing the information the State appeals. Affirmed.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. L. R. Daems,* County Attorney of Wheatland County, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

Citing: *State* v. *Evans,* 15 Mont. 539, 48 Am. St. Rep. 701, 28 L. R. A. 127, 39 Pac. 850; *In re Farrell,* 36 Mont. 254, 92 Pac. 785; *State* v. *Patch,* 21 Mont. 534, 55 Pac. 108; *People* v. *Di Ryana,* 8 Cal. App. 333, 96 Pac. 919; *State* v. *Sickler,* 90 Kan. 783, 136 Pac. 329; *People* v. *Graham,* 6 Park. Cr. Rep. 135; *In re Terrett,* 34 Mont. 325, 86 Pac. 266; *Ex parte Hibbs,* 26 Fed. 421; *United States* v. *Jolly,* 37 Fed. 108; 26 C. J. 898; 1 Cyc. 944.

*Mr. W. C. Husband, Mr. Norman C. Barncord* and *Mr. J. P. Alexander,* the latter of the Bar of Brookings, South Dakota, for Respondents, submitted a brief; *Mr. Husband* argued the cause orally.

A charge of forgery can never be predicated upon a document which is the genuine act of the party or parties pur-

porting to have executed the same. The rule has been stated thus: "The essence of the offense is the making of a false writing with the intent that it shall be received as the act of another than the party signing it. Forgery cannot be committed by the making of a genuine instrument, although the statements made herein are untrue. The term 'falsely' * * * has reference, not to the contents or tenor of the writing or to the facts stated in the writing * * * but it implies that the paper or writing is false, not genuine, fictitious, not a true writing, without regard to the truth or falsehood of the statement it contains." (26 C. J. 898; see, also, *People* v. *Bendit,* 111 Cal. 274, 52 Am. St. Rep. 186, 31 L. R. A. 831, 43 Pac. 901; *State* v. *Young,* 46 N. H. 266, 88 Am. Dec. 212; *Territory* v. *Gutierrez,* 13 N. M. 312, 5 L. R. A. (n. s.) 375, and note, 84 Pac. 525; *Ex parte Geissler,* 196 Fed. 168; *Barron* v. *State,* 12 Ga. App. 342, 77 S. E. 214; *State* v. *Glasener,* 81 Fed. 566; *De Rose* v. *People,* 64 Colo. 332, L. R. A. 1918C,. 1193, and note, 171 Pac. 359; *State* v. *Willson,* 28 Minn. 52, 9 N. W. 28.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On February 23, 1924, an information was filed in the district court of Wheatland county, in which the attempt was made to charge J. G. Alexander and Logan Fowell with the crime of forgery. The trial court sustained a general demurrer, entered a judgment dismissing the information, and the state appealed.

The writing, the subject of the alleged forgery, is designated a traveler's check, and it is charged that the Security State Bank of Judith Gap, Montana, had in its possession a number of these checks which it held in trust for the Bankers' Trust Company of New York City with authority to sell them and under agreement to remit the selling price to the trust company; that Alexander was vice-president of

the bank, and Fowell was assistant cashier; that each had authority to sign the checks for the bank and to deliver them to purchasers, but only upon receiving for each check so sold the full amount for which it was made payable, which amount was to be remitted to the trust company at once; that on December 10, 1923, the bank was insolvent, and Alexander and Fowell knew that it was insolvent, but nevertheless on that day they made out one of these checks for $20 to Chas. W. Franks, and delivered the instrument to Franks without receiving the full face value or any consideration whatever, and without remitting the amount to the trust company, and well knowing that any draft which the bank might issue in payment of the check would not be paid. It is alleged that Franks thereafter countersigned the check, and it was presented to and paid by the trust company, and that Alexander and Fowell acted willfully and feloniously with the intent to defraud the trust company. From these allegations and a copy of the instrument, which is contained in the information, it appears that when delivered to the bank by the trust company these checks were in skeleton form with appropriate blank spaces for the date, amount, name of the purchaser and name of the selling bank, and that, when these blanks in one of the checks were filled, it became an accepted bill of exchange which the trust company was bound to pay.

The only question for determination is: Does the informa-
[1]   charge forgery? So far as material now, section 11355, Revised Codes, provides: "Every person who, with intent to defraud another, falsely makes, alters, forges, or counterfeits * * * any * * * bill of exchange * * * is guilty of forgery."

The attorney general concedes that the three essential elements of the crime involved here are: (1) A false making of an instrument in writing; (2) a fraudulent intent, and (3) a writing which, if genuine, might apparently be of

legal efficacy or the foundation of legal liability, and this is the view entertained by the authorities generally. 2 Bishop's Criminal Law, sec. 523; 26 C. J. 897; *State* v. *Evans,* 15 Mont. 539, 48 Am. St. Rep. 701, 28 L. R. A. 127, 39 Pac. 850; *In re Farrell,* 36 Mont, 254, 92 Pac. 785.) We may eliminate from our consideration the second and third elements, for it is apparent that a fraudulent intent is pleaded sufficiently, and that the instrument, if genuine, imposed legal liability upon the trust company. Our inquiry is, then, narrowed to the single question: Does the information charge that the instrument was falsely made?

The "making" in this instance consisted in writing in the [2]  date, the amount and the name of the bank as drawer, and permitting Franks to write in his name as purchaser. It is alleged that Alexander and Fowell were authorized to do every one of these acts and, having done them, were authorized to deliver the check, but only upon condition that the bank receive the full amount for which the check was issued, and that the amount be remitted immediately to the trust company. Remitting to the trust company was manifestly a condition subsequent, and the allegation that the bank did not remit reflects only upon the question of intent. It is not involved in the solution of the question before us.

While conceding that the date of this check is the correct date, that the amount is the amount for which the bank was authorized to issue a check, that Franks is a real, not a fictitious, person, that these defendants were authorized to sign the name of the bank as drawer of one of these checks, and that the name signed to the check in question is the genuine signature of the bank, the attorney general nevertheless insists that it is possible for a person to commit forgery under such circumstances, and the following texts are quoted in support of the contention: "A person may be guilty of forgery in making a false writing in his

own name" (1 Brill's Criminal Law, sec. 558), and "an agent for some purposes may commit forgery by making or signing an instrument in disobedience to his instructions or in the improper exercise of his authority" (26 C. J. 898).

In support of the text, Brill cites *United States* v. *Long* (C. C.), 30 Fed. 678, *Commonwealth* v. *Brewer*, 113 Ky. 217, 67 S. W. 994; *Moore* v. *Commonwealth*, 92 Ky. 630, 18 S. W. 833, and *Commonwealth* v. *Wilson*, 89 Ky. 157, 25 Am. St. Rep. 528, 12 S. W. 264. The facts of the first case were that John A. Long secured possession of a letter addressed to John G. Long, which contained a money order payable to John G. Long, and that John A. Long extracted the money order, indorsed it "John G. Long," and secured the money to his own use. There was involved the forging of the name of the payee, but the case does not support the text nor reflect upon the question we are considering.

In *Commonwealth* v. *Brewer* it was held that the indictment did not charge forgery; hence the case is not authority to the point to which it is cited. *Moore* v. *Commonwealth* and *Commonwealth* v. *Wilson* will be considered later.

The author also cites cases to the effect that, where there are two persons of the same name, and one of them signs that name to a note with the intent that the note may be used in trade as the note of the other, the act is forgery. (*Edwards* v. *State*, 56 Tex. Cr. 50, 126 Am. St. Rep. 767, 108 S. W. 673; *Barfield* v. *State*, 29 Ga. 127, 74 Am. Dec. 49; *People* v. *Peacock*, 6 Cow. (N. Y.) 72; *People* v. *Rushing*, 130 Cal. 449, 80 Am. St. Rep. 141, 62 Pac. 742, and others.) The theory which underlies those cases is that the person signing in fact signs the name of the other person, though it happens to be his own name as well.

The cases cited in support of the text in Corpus Juris fairly fall into two groups:

(1) Where a public officer, authorized to issue warrants upon the public treasury in payment of services rendered

to the public, in violation of the law issues a warrant to one who has not performed service, and does so with the intent to defraud the treasury, he is guilty of forgery. Typical of this group are *Moore* v. *Commonwealth* and *Commonwealth* v. *Wilson,* above. But those cases proceed upon the theory that it is the official signature which gives validity to the instrument; that when the officer acts in violation of the law he is not acting in his official capacity and has no more right to attach his official signature than he would have to sign the name of another person; hence the instrument is falsely made because it purports to bear the official signature, when, in fact, it does not do so. Upon that theory, though not well expressed, rest the decisions in *In re Terrett,* 34 Mont. 325, 86 Pac. 266, and *Ex parte Hibbs* (D. C.), 26 Fed. 421.

(2) Where a person signs a check or note in blank, and entrusts it to his agent to fill in a particular name as payee, or a given amount, and the agent feloniously fills in a different name or a larger amount, he is guilty of forgery. Typical of this group are *People* v. *Dickie,* 62 Hun, 400, 17 N. Y. Supp. 51; *State* v. *Kroeger,* 47 Mo. 552, and *Regina* v. *Wilson,* 2 Car. & K. 527. An instrument of this character is falsely made, for it purports to be the check or note of the maker when, in fact, it is not such. If the agent does not have authority under any circumstances to write in the name or amount which he does write, there is not then any distinction, in principle, between the instrument which he issues over his principal's genuine signature and one to which he feloniously attaches his principal's signature. In our judgment these cases do not sustain the contention advanced here nor reflect upon the question before us for solution.

Reliance is placed also on the decision in *People* v. *Graham,* 6 Park. Cr. Rep. (N. Y.) 135. But that case also involved the same principle as the cases last considered. Graham was the agent at Buffalo, New York, of the Travelers' In-

surance Company of Hartford, Connecticut, and as such had in his possession certificates or policies issued by the company, complete except the date and name of the selling agent. He was authorized to sell this insurance to travelers and to complete the certificates by the addition of the date and his name, and deliver them to the purchasers. On November 13, 1866, Thomas C. Hunt was killed while traveling between Buffalo and Erie, Pennsylvania, in company with one Warner. Warner returned to Buffalo with the body, and on the day following entered into a conspiracy with Graham to defraud the insurance company. Graham then issued a certificate or policy, antedating it so that it appeared to have been issued to Hunt during his lifetime and delivered it to Warner for the use of Hunt's personal prereresentative. He was convicted of forgery, and the conviction sustained by the superior court of Buffalo. While Graham, as agent of the insurance company, was authorized to issue one of these policies upon the life of the purchaser of the insurance, he was not authorized under any circumstances to issue a policy upon the life of a traveler after the traveler's death.

It is impossible to apply the principle announced in any of the foregoing cases to the facts before us. When delivered to Franks, the traveler's check in question was just what it purported to be—a bill of exchange dated December 10, 1923, drawn by the bank upon the trust company in favor of Franks for $20, and accepted by the trust company. It was such a bill as the bank was authorized to draw, and Alexander and Fowell were authorized to sign for the bank. Clearly, at the very moment of delivery, after the check had been completed by the addition of the date, the amount, the name of the purchaser, and the signature of the bank as the drawer, no crime would have been committed if the defendants had collected from Franks the $20 represented by the check. They would have complied

literally with their instructions and acted strictly within their authority. Their wrongful act consisted in delivering the check to Franks without collecting the specified amount, and in this they violated their instructions and abused their authority. Stripped of all superfluous verbiage, the information charges only that Alexander and Fowell failed to collect the $20 from Franks and did so with an intent to defraud the trust company. However reprehensible their act, it did not constitute forgery within any recognized definition of the term.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.