## ELLIOTT v. MUTUAL LIFE INS. CO. OF NEW YORK.

No. 25224.   Feb. 21, 1939.

Rehearing Denied June 6, 1939.

Application for leave to File Second Petition for Rehearing Denied June 27, 1939.

N. E. McNeill, for plaintiff in error.

Embry, Johnson, Crowe & Tolbert, for defendant in error.

DAVISON, J. This case is presented on appeal from the court of common pleas of Tulsa county.

The action was instituted in that court by Myrtle E. Elliott, nee Beard, as plaintiff, to recover on a life insurance policy issued by the defendant, Mutual Life Insurance Company, on Arthur A. Beard, who died September 2, 1930.

The company defended upon the theory that the policy had been surrendered for cancellation, was canceled, and all liability thereon terminated prior to the death of the insured. Upon trial of the cause it was shown that negotiations for a cancellation of the policy were carried on with the company by one C. R. Craig, who did not then reveal his own identity and acted by correspondence in the name of A. A. Beard. The negotiations terminated in what purported to be a cancellation of the policy.

Whether this transaction was legally effective to release the company depends upon the existence of sufficient authority in C. R. Craig to act as the agent of Arthur A. Beard in negotiating for and consummating the cancellation.

At the conclusion of the evidence each of the parties moved for an instructed verdict. The motion of the defendant was sustained and the plaintiff presents the cause on appeal, appearing herein as plaintiff in error. Our continued reference to the parties will be by their trial court designation.

The principal question to be decided is whether the evidence shows that C. R. Craig was clothed with authority to act for Arthur A. Beard in negotiating for and procuring a cancellation of the policy. If we answer this question in the affirmative, we must also decide whether there is any evidence in the record which, if it had been submitted to the jury, would have justified a contrary conclusion on this point. This latter question arises because of the manner in which the cause was decided in the trial court, that is, by sustaining a motion for a directed verdict, for such a motion should not be sustained "if a disputed and decisive question of fact upon which there is conflicting evidence is presented by the record." Atlas Life Ins. Co. v. Holt, 178 Okla. 28, 61 P.2d 719.

In reviewing the evidence upon the point. we must have in mind that agency is not to be presumed, but, on the contrary, requires proof of facts essential to establish it, and the burden of proving not only the existence of the agency but the nature and extent thereof rests on the party alleging it. Whitney, Ex'r, v. Low, 137 Okla. 1, 278 P. 1096; Kindl v. Doss, Ex'r, 167 Okla. 383, 29 P.2d 946. However, when the facts relied upon to establish the existence of the agency are undisputed and conflicting inferences cannot be drawn therefrom, the question of whether or not an agency existed as well as the powers and limitations thereof is one of law for the court. Continental Supply Co. v. Sinclair Oil & Gas Co., 109 Okla. 178, 235 P. 471; Southern Surety Co. v. Gilkey-Duff Hardware Co., 166 Okla. 84, 26 P.2d 144.

The actual authority of an agent may be founded upon words which expressly confer upon him the power to act, or it may be implied from circumstances surrounding or attending the transaction. 2 Am. Jurisprudence, 70, par. 86; Bronson's Ex'r v. Chappell, 12 Wall. (U. S.) 681, 20 L. Ed.

436; Howe v. Martin, 23 Okla. 561, 102 P. 128. Similarily, "every delegation of authority includes by implication * * * all such incidental authority as is necessary, usual, and proper as a means of effectuating the main authority conferred." Walker Valley Oil & Gas Co. v. Parks & Palmer, 128 Okla. 286, 262 P. 672.

The life insurance policy involved in this action was issued on March 2, 1926, and provided that upon the death of the insured the beneficiary, plaintiff herein, should be paid the sum of $125 per month for 20 years. The premium on the policy became due on the 17th day of July, 1930. Provision was made in the policy for a 30-day grace period which operated to extend the time within which the premium might be paid to August 16, 1930. The policy also had a cash surrender value of $268.95, which plaintiff (assuming the invalidity of the asserted cancellation) alleges, according to the terms of the policy, automatically paid the premiums and extended it in force until a time subsequent to the death of the plaintiff.

During the month of August, 1930, and prior to the 13th day thereof, Arthur A. Beard, the insured, had a conversation with C. R. Craig, who acted as his personal secretary (in addition to acting in a similar capacity for certain corporations in which Mr. Beard was interested) with reference to the policy, and, according to the undisputed testimony of Craig, told him "to cancel the policy."

Pursuant to this direction, C. R. Craig, on August 13, 1930, wrote the defendant company at its Oklahoma City office surrendering the policy and requesting cancellation thereof. C. R. Craig signed the name of A. A. Beard to the letter without indicating that it was not signed by Beard personally. On August 15, 1930, the company replied, acknowledging receipt of the policy, but suggesting that it be continued in force by means of a loan by the company to the insured. Mr. Craig received the letter, and, acting for the insured, answered on August 16th, reiterating the previous request to surrender the policy. To this letter Mr. Craig also signed the name of A. A. Beard without indicating that the signature was not that of Beard. On August 20th, the Oklahoma City office of the defendant company acknowledged receipt of the last above mentioned letter, and advised that the policy was being forwarded to the New York office, together with the request for cancellation, and on August 28th, the Oklahoma City office wrote to the insured, Beard, enclosing check for $268.95 "in payment of full surrender" of the policy. This check was received at Mr. Beard's office by Mr. Craig on August 30th. On the same day, Mr. Craig went to Mr. Beard's home and assisted him in drafting a will (Mr. Beard having taken ill rather suddenly). The point is made in connection with this will that it mentions the other policies of life insurance which Mr. Beard was carrying, but does not mention the policy here in question. This is advanced as a corroborating circumstance and is said to indicate that Beard knew that Craig had carried out his (Beard's) instructions to cancel the policy.

The record also reflects that Mr. Craig had for sometime, especially since January preceding the transaction involved here, been in very close touch with the personal business of Mr. Beard, conducting various transactions according to general directions given him by Mr. Beard. He had carried forward negotiations in connection with other insurance carried by Mr. Beard. With reference to the method of conducting such business, Craig, as a witness, testified in in part as follows:

"The custom was that he would turn matters over to me and tell me to handle them, and I would handle them and whenever he was not doing much at times there he would write the letters and sign his name himself, but at times I would write or dictate the letters for his signature, but he had the custom of turning matters over to me and letting me handle it and I signed his name. Or some times his name by me."

It is thus apparent that the method employed in handling this transaction was not at variance with the method employed by Craig in carrying out the directions of Beard in connection with other matters.

The evidence above set forth is undisputed. In fact, it is in many important respects corroborated and strengthened; as, for instance, by the testimony of Kathrien Hermes, who did stenographic work in Beard's office. This witness overheard Mr. Beard tell Craig he was unable to carry the insurance and wanted it surrendered.

The record is rather voluminous, and we have not undertaken to review all of the evidence introduced, but have epitomized the salient features.

The fact that Craig, as agent, signed the principal's name without indicating that the act was done by an agent rather than the principal does not destroy the binding force of the act. Youngs et al. v. Perry et al.,

59 N. Y. S. 19; Mechanics' Bank of Alexandria v. Bank of Columbia, 5 Wheat. 326, 5 L. Ed. 100; Daniel's Negotiable Instruments (6th Ed.) vol. 1, sec. 383. Nor is there any other evidence in the record which negatives the probative force of the evidence reviewed.

We are impelled to conclude, as did the trial court, upon consideration of the applicable rules of law set forth, supra, that Craig in consummating a surrender and cancellation of the policy was acting as the agent of Beard within the scope of his actual authority as expressly and by necessary implication conferred upon him, and that the means and method adopted by him in carrying out the delegated authority were within the contemplation of the parties.

There is some discussion in the briefs as to the sufficiency of the defendant's pleading to authorize or require proof on the issue of agency. The acts and correspondence leading to a cancellation of the policy are first pleaded as the personal acts and correspondence of the insured, Beard. In the alternative, it is then pleaded in defendant's answer that, if the correspondence was not signed personally by Beard, then that act was accomplished by some one who derived his authority to do so from Beard. If it be assumed that specific pleading of agency was necessary, we deem the pleading sufficient upon the point, and therefore will refrain from discussing the application of the rule which authorizes proof of agency under a pleading which charges the authorized act as that of the principal. See Southern Surety Co. v. Gilkey-Duff Hardware Co., supra.

There is also some discussion in the briefs as to whether the signature to the letters was offered in such a manner as to constitute an automaton or the act of an amanuensis. Since defendant is, as we have seen, entitled to prevail upon the theory of agency, a review of this phase of the argument is unnecessary.

Finding no substantial error in the proceedings before the trial court, our decision is one of affirmance.

BAYLESS, C. J., and OSBORN, GIBSON, HURST, and DANNER, JJ., concur. WELCH, V. C. J., and RILEY and CORN, JJ., dissent.