Mabel TIDMORE, Plaintiff In Error,

v.

STATE of Oklahoma, Defendant In Error.

No. A–12719.

Court of Criminal Appeals of Oklahoma.

June 17, 1959.

Wheeler & Wheeler, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Plaintiff in error, Mabel Tidmore, hereinafter referred to as defendant, was charged by information in the district court of Tulsa County with the crime of uttering a forged instrument, was tried before a jury, found guilty and the jury being unable to agree upon the punishment to be assessed, left that to the court, who fixed the penalty at five years' imprisonment in the State Penitentiary at McAlester.

For reversal three propositions are advanced:

(1) That the court erred in instructing the jury.

(2) That the court erred in admitting testimony of other offenses, both prior and subsequent to the offense charged in the information.

(3) That the judgment and sentence of the court is excessive.

Considering the first proposition, we shall set out the background of the case. The essential averments of the information read:

"* * * that Mabel Tidmore on the 30th day of January, A. D. 1958, in Tulsa County, State of Oklahoma, and within the jurisdiction of this court, did unlawfully, wilfully, knowingly, fraudulently and feloniously, with the intent to defraud, utter and publish as true to one T. H. Jenni, d/b/a Herbert's Market, a certain instrument, to wit: a check, which is in words and figures as follows:

The British-American Oil Producing Company
Dallas, Texas. Jan 30, 1958 Check No. 48713
To First National Bank in Dallas, Texas
Registered
D–16665 $589 and 74 Cts $589.74
In full settlement of items listed in accounting statement.
Pay to the order of The Happy Company
P. O. Drawer 770 103191
Tulsa 1, Oklahoma
The British-American Oil Producing Company
by /s/s/ J. E. Thurman
W. H. Dunn
Countersigned Accountant
(Reverse side of check) The Happy Company
By /s/ W. H. Gorey
W. H. Gorey—Treasurer
/s/ Mabel Tidmore
/s/ T. H. Jenni

that said defendant then and there knowingly at the time that said written instrument was forged and counterfeited and that the signature of W. H. Gorey to said instrument was forged and counterfeited, but said defendant did then and there unlawfully, wilfully, fraudulently and feloniously, utter and publish same with the felonious intent then and there upon the part of her, the said defendant, to beat, cheat and defraud the said T. H. Jenni, d/b/a Herbert's Market and/or the Happy Company, Inc., Tulsa, Oklahoma, out of the sum of $589.74 in good and lawful money of the United States of America, contrary to the form of the statutes in such cases made and provided" etc.

The evidence developed that Miss Tidmore had been in the employ of the Happy Company, Tulsa, an oil field supply house, for fifteen years or more and was the head bookkeeper. Her immediate superior at the time of the charge and since 1956 was W. H. Gorey, Treasurer, and prior to Gorey, her immediate superior was R. C. Lindley, Secretary-Treasurer.

The State proved that the by-laws and policy of the management of the corporation required that all incoming checks made payable to the corporation be first passed to the desk of the president, and then stamped with a rubber stamp bearing the words:

"Pay to the order of First National Bank & Trust Co.,
2249 Tulsa, Okla. 2249 For Deposit Only
The Happy Company."

———◆———

There was introduced into evidence the check set out in the information in the amount of $589.74 from the British-American Oil Producing Company, and payable to the Happy Company, and purporting to bear the signature of the Happy Company, by W. H. Gorey, Treasurer, and which also bore the signature of Mabel Tidmore and T. H. Jenni.

T. H. Jenni operated a nearby grocery and market known as Herbert's Market, and Mr. Jenni testified that the check in question was cashed by him for the defendant, Mabel Tidmore, and that he gave her the money on the check. He further stated that defendant had been a long-time customer of his, and carried an account with him, and for a long period of time had brought to him checks made payable to the Happy Company, and endorsed by the Treasurer and Mabel Tidmore, and he would cash them. He thought he had cashed a hundred or more. He said that some times he would apply part of the cashed check on defendant's account, and give her the balance in cash. Witness identified, in addition to the check forming the basis of the charge against her, a great number of other checks, all bearing the endorsement of the Happy Company, and either the name of W. H. Gorey, as Treasurer, or R. C. Lindley, Secretary-Treasurer.

W. H. Gorey denied that the purported signature on the check forming the basis of the charge was actually his signature. He denied endorsing the check, or having any knowledge of the endorsement; denied ever giving the defendant Tidmore authority to sign his name to, or ever receiving the proceeds of the check or any part thereof. He further denied any knowledge of a great number of other checks introduced into evidence and that purported to bear his signature.

R. C. Lindley, former secretary-treasurer of the Happy Company, likewise denied ever having endorsed a check made payable to the Happy Company for defendant to cash, or ever authorizing her to sign his name, and specifically denied signing a number of checks received in evidence that bore the name the Happy Company, by R. C. Lindley, Secretary-Treasurer, and all of which checks bore the name of Mabel Tidmore and W. H. Jenni, who had cashed them.

Paul Edward Mahaffey, chairman of the Board of the Happy Company also denied any knowledge that defendant had been getting checks made payable to his corporation cashed. He denied that defendant had ever been given any authority to cash checks made payable to his firm, but stated that all checks were required to be stamped with the "For Deposit Only" stamp and taken to their bank. This duty usually fell to the defendant, as head bookkeeper.

J. Howard Edmondson, county attorney of Tulsa County at the time the charge was filed testified that on March 5, 1958 he requested defendant to come to his office for a conference; that Mr. Ben Murdock, attorney for the Happy Company had brought to him a check made payable to the Happy

Company and purporting to be endorsed by W. H. Gorey, which check has been heretofore copied in full, and that he questioned her regarding the same. He said that she readily admitted getting the check cashed, and also admitted she had gotten many more, which were exhibited to her, cashed. He said that defendant told him she had kept the money for her own use and benefit. He said that she stated that she had no specific authority to sign the name of Gorey or Lindley, but it was a general understanding that she did. Mr. Edmondson's conversation with the defendant was quite lengthy.

The defendant, Mabel Tidmore, testified and said that she signed W. H. Gorey's name to the check forming the basis of the charge, endorsed it, and got it cashed at Herbert's Market, but turned the money over to Mr. Gorey in his office. She admitted having endorsed the name of R. C. Lindley and W. R. Gorey to a great number of additional checks, received in evidence, over the years, but claimed that she was authorized by them to sign their names. She claimed that the money in each instance was turned to them. She also said that the corporation had a petty cash account used for paying trucking fees, etc., and that she had in the past gotten checks made payable to the corporation cashed for that account. She denied having gotten for herself any of the proceeds from the check, State's Exhibit 1, or the proceeds from any of the checks made payable to the Happy Company and which she had cashed.

Fred Scott testified that he had been secretary of the Happy Company since 1956. He said that he had supervision of the records of the company; that he and W. H. Gorey on Sunday, February 23, 1958 discovered that the check from the British American Oil Producing Company, made payable to the Happy Company in the amount of $589.74 and received by his company, had not gone into the Happy Company account, at the Bank. They made further checks and discovered other discrepancies, and reported the matter to the county attorney, who eventually sent for their head bookkeeper, Mabel Tidmore, and filed charges.

On rebuttal witnesses Lindley, Gorey and Mahaffey reiterated that they had not given defendant authority to cash any checks made payable to the Happy Company, and particularly State's Exhibit 1. There was other evidence on the part of the State not necessary to summarize.

From the above it is seen that defendant's theory of defense was that she was authorized to sign the name of W. H. Gorey, as Treasurer of the Happy Company, to the check forming the basis of the within charge, and did sign it, and then personally endorsed it. Not only that one, but many more, and had been so authorized by R. C. Lindley, former Secretary-Treasurer, and specifically as to the check forming the basis of the within charge that she had delivered the money to the Treasurer of the Company, and in all other cases had delivered the monies from checks that she had cashed either to Mr. Lindley or to Mr. Gorey, and had never appropriated any portion of the proceeds to her own personal use.

In view of the defendant's theory of defense, the court in addition to instruction No. 9, now complained of but not objected to at time of trial, gave the following pertinent instructions:

"No. 2. You are instructed that the burden of proof in this case is upon the State to establish by evidence beyond a reasonable doubt that all of the material allegations contained in the information, and unless the State has met its duty in this respect, you cannot find the defendant guilty, and must acquit her.

"3. You are instructed that the defendant is presumed to be innocent of the crime charged against her in the information until her guilt is established by evidence beyond a reasonable doubt, and that presumption of innocence continues with the defendant until every material allegation of the information is proven by evidence beyond a reasonable doubt.

\*　　\*　　\*　　\*　　\*　　\*

"7. Let me remind you that the defendant is charged specifically with uttering one certain forged instrument in form of a check which has been introduced in evidence and identified as State's Exhibit 1 and is referred to as set out in the information and in these instructions.

"At the time the court permitted other checks and check transactions to be introduced in evidence, I told you that they would be for a limited purpose only and that I would specifically advise you concerning such limitations in these formal instructions. Ordinarily, the rule is that on the trial for the commission of one offense evidence of other offenses are inadmissible, however, in a prosecution for uttering a forged instrument with intent to defraud, evidence of similar acts of forgery or uttering, committed at about the same time as the alleged offense, is admissible for the purpose of showing a common scheme, plan or motive, or as bearing on the question of intent and with which the act charged was committed. Therefore, you will consider the other checks and check transactions which have been introduced in evidence only to aid you in arriving at the matter of intent or plan and scheme to defraud on the part of the defendant. You will not consider them as separate offenses but you will consider them solely as circumstances tending to show an unlawful intent, plan and scheme to defraud, if, in your judgment, they so indicate.

"And, in this connection you are further instructed that before you can find the defendant guilty you must find, beyond a reasonable doubt, that the particular check referred to in the information was a forged instrument and was knowingly and wilfully uttered by the defendant with the intent to defraud.

"8. You are instructed that a forged endorsement on an otherwise valid check is sufficient to constitute a forged check within the meaning of the law.

"9. The defendant, Mabel Tidmore, has told you from the witness stand that she did cash the check described in the information at Herbert's Market, operated by Mr. Jenni, and further told you that she did write the endorsement on said check and that she did write the name of W. H. Gorey—Treasurer. She further tells you, however, that she was authorized by Mr. Gorey to write his signature on the check and was authorized by him or by Paul Mahaffey, Chairman of the Board of the corporation, to cash the check. And she further tells you that in compliance with said authorization and direction that she returned the money which she received for the check to the Happy Company offices and turned it over either to Mr. Gorey or Mr. Mahaffey.

"In this connection you are instructed that if she was authorized by Mr. Gorey to sign his name to this check specifically in this instance or by general direction and if she did so pursuant to such authorization and if she did merely cash the check and return the proceeds to The Happy Company all in obedience to direction of her superiors and with such authorization she is not guilty of the crime charged. Therefore, if you find from the evidence that she did the acts pursuant to authorization and direction or if her testimony and any other evidence in the case raises in your mind a reasonable doubt as to whether her defense is true, then you must resolve such doubt in her favor and acquit her."

Counsel for reversal under proposition one, say:

"We believe a reading of the above instruction [No. 9], shows clearly that same is prejudicially erroneous in that it shifts the burden of proof in the case to the defendant. It is to be noted that the court's instruction that before the

jury might acquit the defendant, they should find that the defendant was authorized to sign the checks and did so pursuant to such authorization. The last sentence of the instruction places the obligation upon the defendant to raise a reasonable doubt 'as to whether her defense is true.' Or to put it another way, the instruction requires her to raise a reasonable doubt as to her innocence."

■ In commencing our consideration of the argument advanced, there is a proposition of law providing that where a defendant sits by and offers no objection to the instructions given by the court, and offers no suggested instruction or instructions covering the matter complained of, that before reversal is required, the error in the instructions, if any, must be of a fundamental nature. Sheehan v. State, 83 Okl. Cr. 41, 172 P.2d 809; Cherry v. State, Okl. Cr., 276 P.2d 280; Smith v. State, Okl.Cr., 291 P.2d 378; Estes v. State, 95 Okl.Cr. 209, 242 P.2d 459.

We have a statute covering the matter, 22 O.S.1951 § 1068, which reads:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In the within case we have seen from the evidence summarized that the State produced evidence to show that the defendant cashed the check, the basis of the prosecution, and that the purported endorser, W. H. Gorey, swore that the signature to the check was not his. Then we have a situation where the defendant, when she testi-

fied, admitted that she typed the name of "The Happy Company by W. H. Gorey, Treasurer", then signed the name W. H. Gorey and personally endorsed the check and got it cashed at Herbert's Market. So far the record was conclusive of her guilt of the crime charged, but as a defense she said that she was authorized by Mr. Gorey to sign his name and that she gave the proceeds from the check to Gorey as treasurer of the company. The burden was on defendant of course to show circumstances that would relieve her from her admission that she signed the name of Gorey to the check and got it cashed. This she attempted to do, as we have seen. In consequence of the defense, the court gave the instruction that contains the sentence claimed by counsel for defendant to constitute fundamental error, to wit: "Therefore, if you find from the evidence that she did the acts pursuant to authorization and direction or if her testimony and other evidence in the case raises in your mind a reasonable doubt as to whether her defense is true, then you must resolve such doubt in her favor, and acquit her."

■ We do not think the instruction complained of shifted the burden of proof under the circumstances in this case, or that the jury was misled or the defendant prejudiced in any way. Evidently counsel at trial was of the same opinion, as otherwise he would have excepted to instruction No. 9, and submitted a suggested instruction. Considering the instructions as a whole, even though No. 9 could possibly have been made more explicit as to reasonable doubt, we find nothing in the instructions that requires a reversal of this case.

Counsel complains of the admission of other checks drawn in favor of the Happy Company and bearing defendant's admitted endorsement, although it is admitted by counsel that in Oklahoma evidence of other offenses in forgery cases is admissible to show intent or a plan or scheme. He cites Montgomery v. State, 13 Okl.Cr. 652, 166 P. 446; Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 779.

We note from the record that when Mr. Gorey, Treasurer of the Happy Company was testifying, the State offered in evidence a number of checks other than the one forming the basis of the charge and that had been identified and marked as exhibits. Counsel for defendant stated:

"I object, your Honor, each and every item on the ground it's incompetent, irrelevant and immaterial.

"The Court: The witness in testifying before the jury used all of those [checks] and displayed them here without objection, so I think they ought to go into evidence, since they have been exhibited to the jury without objection and the witness has testified concerning them."

When Mr. Jenni of Herbert's Market testified to cashing not only the check forming the basis of the charge, but identified checks, State's Exhibits 2 through 72, counsel objected on the same grounds as before, and the court stated:

"The Court: That objection will be overruled. The checks will be admitted only for the purpose of the jury determining at this time whether they evidence a plan and scheme on the part of the defendant. The Court will very carefully instruct you on the written instructions as to what consideration you may give the checks. But at this time, why, bear in mind that they are in for a limited purpose only, and I will explain that purpose to you in my formal instructions at the close of the case.

"Mr. Levy [Ass't Co. Att'y]: May I make this statement, your Honor, that we also offer them for a second purpose, and that is for the purpose of showing intent to defraud.

"The Court: I will permit them to be exhibited to the jury at this time; permit them to be introduced in evidence, and at the close of the case, I will carefully, by written instruction, tell the jury the purpose for which they may be considered."

 We note that the court correctly instructed the jury as to the specific purpose of the admission of checks other than Exhibit No. 1 into evidence, to wit: For their determination of a scheme or plan on the part of the defendant as set out in instruction No. 7, which we have quoted.

We conclude that the court did not err, under the evidence developed in this case, in the admission of checks additional to State's exhibit No. 1, into evidence for the specific purpose stated to the jury.

Uttering a forged instrument (21 O.S.1951 § 1577) constitutes forgery in the second degree and the punishment is fixed (21 O.S.1951 § 1621) at not exceeding seven years in the penitentiary. The record does not justify this Court in interfering with the sentence of five years imposed.

The judgment and sentence is affirmed.

NIX and BRETT, JJ., concur.