STATE of Oklahoma ex rel. Charles NES-
BITT, Attorney General, Plain-
tiff in Error,

v.

The LIBERTY NATIONAL BANK AND
TRUST COMPANY OF OKLAHOMA
CITY, Defendant in Error.

No. 40745.

Supreme Court of Oklahoma.

April 12, 1966.

As Corrected May 9, 1966.

Charles Nesbitt, Atty. Gen., F. Burck Bailey, Asst. Atty. Gen., for plaintiff in error.

Looney, Watts, Looney, Nichols & Johnson, and Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for defendant in error.

HODGES, Justice.

This action was commenced in May, 1963, on behalf of the State of Oklahoma, by its Attorney General, as plaintiff, to recover the face amount of certain state warrants from the Liberty National Bank & Trust Company of Oklahoma City, as defendant. The defendant entered a demurrer to the plaintiff's amended petition which was sustained by the trial court on October 11, 1963. The plaintiff declined to plead further and appealed to this court on the original record asserting that its amended petition alleged a cause of action. The parties will be referred to in this opinion by their trial court designations, with the exception that the plaintiff will also be referred to as "the State".

The original petition of the plaintiff alleged that defendant paid certain state warrants bearing a forged endorsement of the payee's signature and transmitted these warrants to the State for payment with an express guarantee that prior endorsements were genuine; that the State paid these warrants relying on the defendant's guarantee; and that the State was entitled to

recover upon defendant's guarantee of the genuineness of the payee's signature.

In September, 1963, the plaintiff, with permission of the court, voluntarily amended its petition to allege the evidentiary facts that gave rise to this dispute. This amended petition alleges in substance that prior to August 5, 1959, Max Genet, Jr., then Director of the Department of Commerce and Industry of the State of Oklahoma, and Dan Savage entered into a "scheme, understanding, and agreement, whereby claims would be filed by Dan Savage against the Department of Commerce and Industry for purported professional services not actually performed by him." These claims were to be approved by Max Genet, Jr. as the Director of this Department and transmitted by him to the Budget Department for payment. This scheme to defraud the state was implemented in January, 1960, and continued through October, 1962. During this thirty-four month period, thirty-one monthly claims were submitted by Dan Savage which purported to be for "consultant and professional services" rendered to the Department of Commerce and Industry. These claims ranged in amount from $550.00 to $725.00. Upon approval of the claims by Max Genet, Jr., state warrants were prepared and issued in the usual manner, bearing the signature of the State Auditor, as drawer, directing the State Treasurer, as drawee, to pay the face amount to the order of Dan Savage, as payee. The warrants were then delivered to Max Genet, Jr. to be distributed to the payee. The amended petition further alleges that each of the warrants was presented to, and cashed by, the defendant and was then submitted to the State Treasurer for payment by the defendant bearing the following guarantee stamped beneath the signature of the payee: "prior endorsements guaranteed". It is then alleged that the defendant is liable to the plaintiff for the face amount of each of these warrants because the name of Dan Savage had been "forged" to each of these warrants by Max Genet, Jr. or by someone at his direction. Both the claims forms and the warrants were at-tached to the petition and made a part thereof by reference. The total amount involved is $19,125.00.

■ The transactions in question occurred prior to the effective date of the Uniform Commercial Code, and its provisions are therefore not applicable. 12A O.S.1961, Section 10–101. Further, the provisions of the Negotiable Instruments Law, 48 O.S.1961, Sections 1–406, do not apply as state warrants are not negotiable instruments, even though they may be transferred by delivery or assignment. Sebring v. Fagin, 193 Okl. 142, 141 P.2d 792; Logan County Bank v. Farmers' National Bank, 55 Okl. 592, 155 P. 561. Even though the warrants are nonnegotiable, a number of cases involving negotiable instruments are cited herein where it is felt that the fact of negotiability is not a distinguishing factor as to the point under consideration.

■ We recognize at the outset that if the amended petition properly alleges that the signature of the payee was a forgery the defendant is liable upon its express guarantee of prior endorsements. In McEwen v. Black, 44 Okl. 644, 146 P. 37, the court quoted the following language with approval from Pattee Plow Co. v. Beard, 27 Okl. 239, 110 P. 752, Ann.Cas.1912B, 704:

"'* * * There can be no indorsement in the strict legal and commercial sense of that term on a note not negotiable or any other instrument of writing, except negotiable paper, *unless* he who indorses his name upon the nonnegotiable instrument undertakes by his written or oral agreement to become responsible as an indorser. Daniel on Negotiable Instruments, par. 709. Nonnegotiable instruments do not fall within the pale of the law merchant; and the law therefore writes no contract over a blank indorsement on a nonnegotiable instrument as it does over a blank indorsement on a negotiable instrument.'" (Italics ours). In Steele v. Hudson, 30 Okl. 518, 120 P. 616, it was held that an assignor of a nonnegotiable note is bound to an assignee upon his agreement to become liable as an endorser or guarantor. While each of these

cited cases involved an action brought by an assignee upon a nonnegotiable instrument which he had purchased, we hold that a drawee may also rely upon an express guarantee of prior endorsements made by a party presenting a nonnegotiable instrument for collection. In a case factually similar to the instant controversy, the Supreme Court of the United States held that a collecting bank's express guarantee of prior endorsements stamped on government checks amounted to a warranty that the payees' signatures were genuine and entitled the Government to recover the payments made. National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383. There was no dispute in that case that the checks were issued as a result of false claims submitted by a government employee who then forged the payees' signatures to the checks. The Supreme Court pointed out that the prevailing rule is that such misconduct by an employee does not ordinarily absolve a collecting bank from liability upon its express guarantee of prior endorsements. See, in addition, Wilson v. First National Bank & Trust Co., Okl., 276 P.2d 766; National Bank of Commerce v. Fish, 67 Okl. 102, 169 P. 1105, L.R.A. 1918F, 278; and Annotation in 99 A.L.R. 439. In our view, the principles adopted by the Supreme Court in the National Metropolitan Bank case should be applied to allow the plaintiff a right of action in the instant case *if* a forgery of the payee's signature has been properly alleged. See also the reasoning expressed by this court in P. & H. Finance Co. v. First State Bank, 185 Okl. 558, 94 P.2d 894.

The plaintiff first contends that the amended petition alleges a forgery by virtue of an unauthorized endorsement of the payee's name upon the state warrants. The defendant argues that the facts alleged in the amended petition are incompatible with the conclusion that the payee did not approve of the signing of his name to the warrants.

■ In reviewing an order of the trial court sustaining a demurrer to a petition, all the facts well pleaded in the petition must be taken as admitted to be true. Henrie v. Griffith, Okl., 395 P.2d 809; Edwards v. Petross, Okl., 381 P.2d 1008; Seitz v. Jones, Okl., 370 P.2d 300. But the defendant's demurrer does not admit the plaintiff's conclusions of fact or law which are not supported by the evidentiary facts contained in the petition. Lewis v. Childers, Okl., 376 P.2d 583; Bates v. Old Mac Coal Co., Okl., 271 P.2d 315. In Mosburg v. Parker, Okl., 376 P.2d 345, this court said:

> "While appellant relies on the rule that respondent, by her demurrer, admitted the truth of the allegations in her petition, it is well settled that such pleading does not admit conclusions unattended by allegations of fact to support them. Duncan v. Golden, Okl., 316 P.2d 1116, 1119. * * *"

With this in mind we turn now to an examination of the plaintiff's amended petition.

■■ We recognize, as the plaintiff asserts, that the amended petition avers that "the name of Dan Savage was then *forged* to each of these warrants by Max Genet, Jr., or by someone at his direction." (Italics ours). Yet it is clear that the use of the term "forged" in the foregoing quotation reflects the conclusion of the plaintiff as to the legal significance of the evidentiary facts previously detailed in its amended petition. This is particularly apparent in the instant case as the plaintiff's original petition merely alleged that the payee's signature was forged; but prior to trial, plaintiff, on its own motion, amended its petition to set forth the basic facts involved in this dispute. The fact that the plaintiff concludes that a forgery has been committed is not admitted by defendant's demurrer, under the authorities cited above. The question which must be resolved is whether the basic facts recited in the amended petition, together with the logical inferences to be drawn therefrom, establish the purported forgery.

The amended petition, as seen above, alleged that Max Genet, Jr. and Dan Savage entered into a scheme to defraud the State

of Oklahoma. They agreed that Savage would submit a false claim for services rendered which would be approved by Genet and submitted to the State for payment. The state warrants were then regularly prepared and returned to Genet who signed the name of Savage to the warrants or directed another to do so and cashed them at the defendant bank. The fact that there is no indication on the warrants that the payee's name was signed by an agent does not affect the validity of the signature if the agent in fact possessed authority to sign for the payee. Elliott v. Mutual Life Ins. Co., 185 Okl. 289, 91 P.2d 746; Kiekhoefer v. United States Nat. Bank, 2 Cal.2d 98, 39 P.2d 807, 96 A.L.R. 1244; 11 Am.Jur.2d Bills & Notes, Sections 211, 559. It is difficult to see how the plaintiff can argue that Genet did not possess the authority to sign these warrants after expressly alleging that he and Savage were partners in a conspiracy to defraud the State. That the facts alleged by the plaintiff constitute a conspiracy to defraud the State is beyond doubt. Burns v. State, 72 Okl.Cr. 432, 117 P.2d 155; Clark v. Sloan, 169 Okl. 347, 37 P.2d 263. Obtaining the warrants per se would have availed the conspirators nothing. The warrants had to be cashed to accomplish the purpose of this joint undertaking. It was thus necessary for Savage or Genet to sign Savage's name to the warrants or to direct someone else to do it. When Genet signed Savage's name he did so in furtherance of the conspiracy as it was the purpose of their purported scheme to obtain *money* from the State. It is significant that it is alleged that this fraud was practiced upon the State by the two conspirators for a period of thirty-four months. During this period of time Savage necessarily knew that he was not cashing these warrants but that Genet or someone at his direction was doing so. Yet Savage continued to submit the fraudulent claims. There can be no logical conclusion drawn from the facts as alleged by the plaintiff but that Savage and Genet schemed together to defraud the State by obtaining and cashing state warrants for services not actually performed. In this joint undertaking each acted as the agent for the other, and in signing the name of Savage to the warrants, Genet did so with the express authorization and consent of his coconspirator.

If the plaintiff intended to allege that, after causing the warrants to be issued, Genet withdrew from the original joint undertaking and committed a separate fraud upon Savage by signing his name without consent, as is alluded to in plaintiff's brief, its amended petition should have set forth such facts. But the amended petition is devoid of any allegation that when Genet cashed these checks he did so acting on his own, or for his own purposes, rather than in furtherance of the alleged joint scheme to defraud the State. As no such facts are alleged, or reasonably inferable, we must presume that such facts do not exist in passing on this demurrer to the amended petition. Harrison v. Commander Mills, Inc., Okl., 298 P.2d 749.

The plaintiff next argues that *even if Genet was authorized* to endorse the payee's name to these documents, such endorsement is nevertheless a forgery citing Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N.E. 740, 22 L.R.A., N.S., 250. In the cited case an employee fraudulently induced his employer to issue a number of checks payable to "A. L. Sefton", a woman, apparently known by the defrauding employee. The endorsements of the payee's name to certain of these checks, not actually signed by her, were held to be forgeries. We have carefully reviewed this case, and nowhere does the court indicate that the defrauding employee had been authorized by the payee to endorse these checks for her, or even that she had any knowledge of the issuance of the checks to which her endorsement was forged. The case holds, in accordance with the weight of authority, that a drawee bank may not debit a depositor's account where the depositor's check is paid bearing a forged endorsement, but the case is not authority for the proposition that an authorized signing of a payee's name can constitute forgery.

It has also been brought to the attention of the court that in Cornelius v. State, 27 Okl.Cr. 331, 227 P. 845, the Court of Criminal Appeals of this State held that it is forgery to sign the name of another to a false document even though the perpetrator had authority from the person whose name he affixed to the document. In the Cornelius case, the defense argued the accused had been authorized by his stepson to sign the documents in question. The court pointed out that the stepson could not legally grant such authority to the accused because he was a minor and was also intellectually incapable of making such a contract. But the court held that even waiving these disabilities, the accused was guilty on the alternate theory that it is forgery to affix another's name to a false document. This alternate theory that forgery can be committed by a genuine making of a false document has not been followed in subsequent cases in this State. In fact, less than one year after the decision in the Cornelius case, the same court, in Ex parte Offutt, 29 Okl. Cr. 401, 234 P. 222, adopted the following definition of forgery from the case of People v. Bendit, 111 Cal. 274, 43 P. 901, 31 L.R.A. 831:

> " 'To constitute forgery, there must be the making of a writing which falsely purports to be the writing of another. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. To make it such there must be a design to pass as the genuine writing of another person, that which is not his writing.' "

This language is in accord with the rule prevailing in the vast majority of jurisdictions in this country that the crime of forgery requires the false making of a document, but is not committed by the genuine making of a false document. 23 Am.Jur. Forgery, Section 7; 37 C.J.S. Forgery § 5; and see Annotation in 41 A.L.R. 229, Supplemented in 46 A.L.R. 1529 and 51 A.L.R. 568.

We do not agree with the alternate theory expressed in the Cornelius case and this theory does not appear to retain vitality today even in criminal cases. In any event, it is not in point in the present case. The state warrants are not false documents. They were properly prepared, executed and issued by the State. They bear the genuine signature of the State Auditor as drawer and were properly countersigned by the State Treasurer. Even though fraudulently procured, the warrants are exactly what they purport to be. State v. Corfield, 46 Kan. 207, 26 P. 498; People v. Pfeiffer, 243 Ill. 200, 90 N.E. 680, 26 L.R.A., N.S., 138. Had the defendant contacted the appropriate state officials prior to cashing these warrants, it would have been informed that the warrants were valid and would be paid by the State and they were, in fact, so paid.

 In our opinion the authorized endorsement of the payee's name to the state warrants was not forgery. This view is consonant with the holding of the Court of Criminal Appeals of this State that it is a complete defense to a charge of forging another's name to a document that the person affixing the signature possessed the authority to do so. Bradley v. State, 63 Okl. Cr. 203, 74 P.2d 126; Bradley v. State, 63 Okl.Cr. 218, 74 P.2d 134; and see Sunday v. State, 87 Okl.Cr. 133, 194 P.2d 905; Tidmore v. State, Okl.Cr., 341 P.2d 618. The elements of forgery are (1) a false making or alteration of an instrument in writing, (2) a fraudulent intent, and (3) a writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability. Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 779; Jones v. State, 69 Okl.Cr. 244, 101 P.2d 860. We may assume that the plaintiff has sufficiently alleged the latter two elements of forgery, but the authorized signing of another's name does not constitute a false making. State v. Alexander, 73 Mont. 329, 236 P. 542; Baldwin Motors, Inc. v. Aetna Cas. & Sur. Co., 24 Conn.Sup. 498, 194 A.2d 709; See also Marteney v. United States, 10th Cir, 216 F.2d 760. This is in keeping with the fundamental rule that

when an agent, acting within the scope of his authority, affixes the name of his principal to a writing, it is, in law, equivalent to an actual signing by the principal. Elliott v. Mutual Life Ins. Co., 185 Okl. 289, 91 P.2d 746; 3 Am.Jur.2d Agency, Section 261. In the instant case, the defendant, by its stamped endorsement, guaranteed to the plaintiff that the payee's signature upon each warrant was genuine and it is. There may therefore be no recovery upon this guarantee.

The act of the defendant in cashing these state warrants did not occasion the loss of which the State complains. The State issued these warrants intending that they should be paid when properly presented to the State Treasurer for payment. This is what occurred. The loss results not from any act of the defendant but from the submission of the false claims to the State. The State voluntarily issued and redeemed these warrants, and in our opinion has alleged no basis in law or equity for shifting this loss to the defendant. See Lincoln Bldg. & Loan Ass'n v. Liberty Nat. Bank & Trust Co., 312 Ky. 282, 227 S.W.2d 191; Kiekhoefer v. United States Nat. Bank, 2 Cal.2d 98, 39 P.2d 807, 96 A.L.R. 1244. The State's recovery must now be against those who perpetrated the fraud upon it.

In summary we hold that the amended petition of the plaintiff alleges that the payee's signature was affixed to the state warrants with the consent and approval of the payee and that this authorized signing did not constitute a forged endorsement of the payee's signature. The plaintiff's amended petition does not allege a cause of action against the defendant and the defendant's demurrer was properly sustained.

Judgment affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, IRWIN, and LAVENDER, JJ., concur.

BERRY, J., concurs in result.

BLACKBIRD, J., dissents.